IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NPF FRANCHISING, LLC, | ) | CASE NO. 1:18 CV 277 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| SY DAWGS, LLC, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me by referral[1] is a diversity action under 28 U.S.C. § 1332 by NPF Franchising, LLC (NPF) against SY Dawgs, LLC (SY Dawgs) and Joel A. Bartsch seeking *inter alia* preliminary and permanent injunctions requiring that SY Dawgs/Bartsch comply with a 2015 non-compete agreement.[2] Before the hearing on the referred motion for preliminary injunction, the parties have filed a stipulation of facts, together with a report

---

[1] ECF # 11.

[2] ECF # 14 (Amended complaint). SY Dawgs/Bartsch answered the amended complaint (ECF # 45). A motion by NPF for an *ex parte* temporary restraining order and preliminary injunction (ECF # 3) was filed prior to an appearance by counsel for ST Dawgs (ECF # 9). A status conference was conducted by United States District Judge Donald C. Nugent (ECF # 10), at which a hearing on the motion for preliminary injunction was set and the matter then referred to me (ECF # 11). Subsequent to that hearing and referral, the defendants responded in opposition to the motion for a temporary restraining order and preliminary injunction (ECF # 18) and NPF replied to that opposition. (ECF # 22).

listing disputed issues of fact.[3] NPF[4] and SY Dawgs/Bartsch[5] have each filed opening statements. Under my procedural orders,[6] a hearing on the motion was held on February 26, 2018,[7] which was followed by the submission of proposed findings of fact and conclusions of law by SY Dawgs/Bartsch[8] and NPF,[9] which filing was objected to by SY Dawgs/Bartsch.[10] An additional hearing for final arguments on the motion was conducted on March 23, 2018.[11]

## Facts

The basic facts have been stipulated to by the parties.[12] I will discuss additional facts as part of the analysis of the pending motion.

---

[3] ECF # 30.

[4] ECF # 31.

[5] ECF # 32.

[6] ECF # 36, 40.

[7] ECF # 39, 42.

[8] ECF # 43.

[9] ECF # 44.

[10] ECF # 46.

[11] ECF # 47.

[12] ECF # 30 at ¶¶1-17.

## Analysis

**A.     Controlling law**

*1.     Preliminary injunction*

The grant of a preliminary injunction under Federal Rule of Civil Procedure 65 is an extraordinary remedy, and the moving party carries the burden of proving that the circumstances clearly demand it.[13] A district court uses equitable principles of federal law in determining whether to issue a preliminary injunction.[14] In doing so, the court considers four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.[15] The court considers these factors in aggregate, "balanced according to their relative strengths."[16] The strength of the likelihood of success on the merits is inversely proportional to the amount of irreparable harm that will be suffered if an injunction does not issue.[17] A particularly strong showing of

---

[13] *See*, *Penetone Corp. v. Palchem Inc.*, 627 F. Supp. 997, 1004 (N.D. Ohio 1985).

[14] *See*, *Southern Milk Sales v. Martin*, 924 F.2d 98, 102 (6th Cir.1991).

[15] *Leary v. Daeschner*, 228 F.3d 729 (6th Cir.2000); *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997).

[16] *Fed. Sav. & Loan Ins. Corp. v. Quinn*, 711 F. Supp. 366, 376 (N.D. Ohio 1989), vacated on other grounds, 922 F.2d 1251 (6th Cir.1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)).

[17] *Baker v. Adams County/Ohio Valley School Bd.*, 310 F.3d 927, 928 (6th Cir. 2002).

likely success on the merits may allow for an injunction despite a weaker showing of irreparable harm, and vice versa.[18] Although the court must engage in this balancing test, a plaintiff must always demonstrate some irreparable injury before a preliminary injunction may issue.[19] When considering the first factor – likelihood of success on the merits – the court must anticipate the outcome of the underlying lawsuit. Hence, the court applies the substantive law that will be used at trial. In an action for breach of a non-compete agreement, the contract's choice-of-law clause dictates the choice of law used at trial.[20]

At the preliminary injunction stage, a district court does not resolve "doubtful or difficult questions of law or disputed questions of fact."[21] The factual findings of a court deciding on a motion for preliminary injunction are not binding in the underlying lawsuit.[22]

---

[18] *Cabot Corp. v. King*, 790 F. Supp. 153, 155 (N.D. Ohio 1992).

[19] *Basicomputer Corp. v. Scott*, 791 F. Supp. 1280, 1285 (N.D. Ohio 1991), aff'd, 973 F.2d 507 (6th Cir.1992).

[20] *See*, *Tele–Save Merch. Co. v. Consumers Dist. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (holding that in diversity actions, federal district courts in Ohio adhere to contractual choice-of-law clauses "unless the law of the chosen state sought to be applied is concededly repugnant to and in violation of the public policy of [Ohio]") (citing *Jarvis v. Ashland Oil*, 17 Ohio St. 3d 189, 192, 478 N.E.2d 786, 789 (1985)).

[21] *Neveux v. Webcraft Techs.*, 921 F. Supp. 1568, 1572 (E.D .Mich. 1996) (citing *Int'l Molders' and Allied Workers' Local Union v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986)); *see also*, *Sargent v. Am. Greetings Corp.*, 588 F. Supp. 912, 925 (N.D. Ohio 1984) (denying a motion for preliminary injunction in part because genuine issues of material fact existed).

[22] *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

### *2.    Ohio non-compete agreements*

A non-compete agreement is considered reasonable, under Ohio law, if three conditions are met: (1) it goes no further than necessary to protect the legitimate interest of the employer; (2) it does not impose undue hardships on the employee; and (3) it is not injurious to the public.[23]

### **B.    Application of law**

The hearing on the motion and the argument after the filing of proposed findings of fact and conclusions of law narrowed the focus of the dispute between the parties.

For ease of reference, and to aid in understanding the parties' arguments and my ruling thereon, I have attached a diagram to this report and recommendation visually depicting the critical facts, Addendum A, which is a second edition of the hand drawn chart made on the courtroom white board at the argument and identified as Court Exhibit A.  I have further attached an linear outline of that diagram, Addendum B, which contains the full text of the notes made on Addendum A.

This case centers on the Master Franchise Agreement entered into by NFP Franchising and SY Dawgs LLC in 2015.[24]  Joel Bartsch signed that agreement on behalf of the franchisee.  Section 8.14(b) provides that "Barth has agreed to join in the execution and delivery of the Non-Disclosure and Non-Competition Agreement attached hereto as Exhibit

---

[23] *Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 25-26, 325 N.E.2d 544, 547 (1975).

[24] ECF # 43-1 at JX1.

H. . . ."[25]  It goes on to state "[b]ut neither Mr. Bartsch or any other individual shall be personally liable for the obligations of the Franchisee arising under this Agreement or any other document or instrument executed in connection with this Agreement."[26]

The Non-Disclosure and Non-Competition Agreement (NCA), as stated, is attached to the Franchise Agreement as Exhibit H,[27] and has been marked as a free-standing document as Joint Exhibit 2.[28]  Both Exhibit H and the free-standing NCA are signed by Bartsch on behalf of SY Dawgs and personally.

Both parties here emphasized at the final argument that in their view the Franchise and the NCA are not ambiguous.  Nevertheless each party would apply that language differently as to Bartsch's responsibility under those agreements going forward.

## *1.  Likelihood of success on the merits*

As illustrated by Addenda A and B, the request for preliminary injunction now focuses narrowly on Bartsch and his actions or inactions as to SY Fast Pitch LLC (Fast Pitch), which is not a party to this case.  Under the defendants' interpretation of the "unambiguous" Franchise Agreement and the NCA, Bartsch has no personal responsibility and can participate in Fast Pitch without limitation.  The plaintiff argues, however, that

---

[25] *Id.* at 37.

[26] *Id.*

[27] *Id.* and DApp 236-41.

[28] DApp 242-47.

Bartsch remains personally bound by the NCA under its interpretation of the "unambiguous" agreements.

The essence of NPF's argument here is that the NCA requires that Bartsch cannot, either directly or indirectly have any involvement in any "competitive business" within two hundred miles of the Complex, or within a similar radius of any other NPF franchise, for two years.[29]

NPF claims that (1) Bartsch has breached the Franchise and the NCA in the past by attempting to form a new competitive league in competition with NPF,[30] and (2) is presently violating the NCA by indirectly operating Fast Pitch, which is claimed to be a "competitive business," through a *de facto* merger with SY Dawgs.[31]

The Court cannot address the first element of NPF's claim - concerning alleged prior breaches by Bartsch because the "purpose of an injunction is to prevent future violations rather than to remedy past harms."[32] Injunctive relief is not available for claims that are not ripe.[33]

---

[29] *Id*. at 12-13.

[30] *Id*. at 14.

[31] *Id*.

[32] *PolyOne v. Kutka*, No. 1:13 CV 2717, 2014 WL 7211692, at * 4 (N.D. Ohio Oct. 31, 2014).

[33] *Id*. at 395.

The evidence as to precisely what actions are now being taken, arguably in contravention of the NCA, shows only that:

- Fast Pitch has signed players to contracts.[34]

- These players are not now being paid by Bartsch,[35] but have now assembled and train at the Complex Bartsch owns but does not operate.

- Although Fast Pitch "intends" to play some games at the Complex[36] and further intends to play games at other, unknown "softball related events" around the nation as a "barnstorming" teams, [37] it also has not to date played, scheduled, or announced any competitive games.

While Bartsch admits he did in the past - 2017 through January 2018- "explore[] the option" of creating a rival league in competition with NPF,[38] the evidence now is that he hopes in the future to be financially involved with Fast Pitch but presently has no role in the team.[39]

Accordingly, in order to establish a present, non-speculative breach of the NCA by Bartsch,[40] NPF initially argues that the mere presence of the Fast Pitch team on property

---

[34] ECF # 43 at 7, ¶ 39 (citing record).

[35] *Id*. at ¶¶ 40, 41 (citing record).

[36] *Id.* at ¶ 42 (citing record).

[37] *Id.* at ¶ 43 (citing reocrd).

[38] *Id*. at ¶ 36 (citing record).

[39] *Id*. at ¶ 40 (citing record).

[40] As has been noted, an injunction may not bind a non-party to the dispute, but non-parties may be held in contempt for aiding and abetting in the violation of an injunction

owned by Bartsch but not operated by him violates the NCA, [41] or that Fast Pitch must be regarded legally as an entity controlled by Bartsch, regardless of the facts even though Bartsch does not own, operate, or fund Fast Pitch.

Bartsch notes that in Ohio common ownership is critical to establishing successor liability whereby a successor corporation may be found liable for the obligations of the seller.[42] Here, as noted, Bartsch is not an owner of Fast Pitch as he was of SY Dawgs. Further, as to the concept that Fast Pitch exists as the result of a *de facto* merger with SY Dawgs, there is no evidence that Fast Pitch "totally absorbed" the operations of SY Dawgs into itself.[43] Specifically, although there is some commonality in the business operations,[44] there is no common ownership as noted above and no common source of funding.[45] Moreover, there is no evidence that SY Dawgs, which is owned by Bartsch,[46] has been

---

entered against a party. See, *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.,* 96 F.3d 1390, 1395 (Fed. Cir. 1996).

[41] *Id*.

[42] See, *WRK Rarities, LLC v. United States*, 165 F.Supp. 3d 631, 637 (N.D. Ohio 2016).

[43] *US Herbs, Inc. v. Riverside Partners*, LLC, 2017 WL 238446, at *6 (N.D. Ohio Jan. 19, 2017).

[44] Connie May was general manager of the SY Dawgs (see, ECF # 43 at ¶ 9) and is now operates Fast Pitch. See, *id*. at ¶ 37. Fast Pitch is located at the Complex, as was the SY Dawgs. *Id*. at ¶ 12.

[45] Bartsch provided "most of the financial backing" for the SY Dawgs. *Id*. at ¶ 20. But, he currently plays no role in Fast Pitch. *Id*. at ¶ 40.

[46] *Id*. at ¶ 6.

dissolved and then absorbed by Fast Pitch. Finally, there is no evidence that Fast Pitch has assumed obligations and liabilities of SY Dawgs so as to continue its operations.[47]

Accordingly, for purposes of the request for injunctive relief, NPF has not shown a substantial likelihood that Fast Pitch is a successor entity by *de facto* merger to SY Dawgs, or because or that Bartsch owns or controls SY Dawgs.

In addition, NPF contends that Bartsch remains liable under the NCA for the presence of Fast Pitch on property owned, although not operated, by him.[48]

But this argument will turn on the interpretation of the Franchise Agreement's disclaimer of Bartsch's personal liability. Despite the proclamation of both counsel that the language of the Franchise Agreement's disclaimer is unambiguous, their respective applications of this language render very different results. The disclaimer expressly states that "neither Mr. Bartsch or any other individual shall be personally liable for the obligations of the Franchisee arising under this Agreement or any other document or instrument executed in connection with this Agreement."[49] The NCA is a document executed in connection with the Franchise Agreement; it is an exhibit thereto. Perhaps an ambiguity exists that will require recourse to parol evidence. In any event, I cannot conclude that a substantial

---

[47] I note in this regard that the players now under contract by Fast Pitch do not include all the players under contract to SY Dawgs. *Id.* at ¶ 39.

[48] Connie May, through RAW Sports, LLC, which is wholly owned by her, operates the complex. *Id.* at ¶ 15. No operating agreement or lease or other document concerning the relationship between RAW Sports, LLC and KTC Interests, LLC, the complex owner, is in the present record.

[49] JX1, DApp 211.

likelihood exists that NPF will succeed on its claim that Bartsch has violated the NCA by SY Dawgs's use of the Complex for training.

### *3.     Irreparable harm*

NPF's claim of irreparable harm rests on its argument that the continued existence of Fast Pitch at the Complex is causing such harm because it confuses the softball community, reduces the good will enjoyed by NPF, and damages its reputation.[50]

The test for irreparable harm is that a plaintiff must show by clear and convincing evidence that it will suffer actual and imminent harm, not speculative of unsubstantiated damages.[51]  Merely financial injury, "however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough."[52]

There is no evidence in the record that any defendant has taken any action to discourage existing NPF franchisees from continuing their affiliation with NPF, or done anything to discourage any potential new franchisee from joining NPF. Nor is their any evidence that any defendant has taken any action to cause any NPF supplier, vendor, or media partner to cancel, suspend or decline any involvement with NPF.[53]  In fact, the record shows that since Fast Pitch was created, NPF has had conversations with at least one

---

[50] ECF # 44 at 16.

[51] *Abney v. Amgen, Inc.,* 443 F. 3d 540, 552 (6th Cir. 2006); *Economou v. Physicians Weight Loss Center of America,* 765 F. Supp. 2d 1024, 1031 (N.D. Ohio 1991).

[52] *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

[53] See, ECF # 43 at ¶¶ 49, 60, 61, 62 (citing record).

potential new franchisee about joining NPF,[54] and NPF has continued conversations with ESPN about a new media contract,[55] although NPF has not had a media contract with ESPN since 2013.[56]

Any existing business can assert that any new venture in its general marketplace may cause some loss of stature or reputation merely by reason of its presence. Likewise, that new venture may cause confusion at some level in the marketplace. But the law does not provide a mechanism by which an existing business, without clear, well-defined and limited cause, can strangle potential new competitors in their cribs simply to preserve a more favorable market position.[57]

### 4. *Substantial harm to others and the public interest*

Although the law of the Sixth Circuit provides for balancing all four factors "according to their relative strengths,"[58] given the findings and conclusions explained above as to the "substantial likelihood of success" and "irreparable harm" elements, the evidence presented at the hearing and the briefing of the parties does not persuade me that either of the remaining factors otherwise warrant the issuance of a preliminary injunction. In proposing

---

[54] *Id*. at ¶ 52 (citing record).

[55] *Id*. at ¶ 59 (citing record).

[56] *Id*. at ¶¶ 55, 56 (citing record).

[57] *Groeneveld Transport Efficiency, Inc., v. Lubecore Int'l Inc.*, No. 1:10 CV 702, 2011 WL 768056 at *13(N.D. Ohio Feb.28, 2011).

[58] *Fed. Sav. & Loan Ins. Corp., v. Quinn*, 711 F. Supp. at 376.

findings of fact and conclusions of law, neither party cite to any record evidence and instead offer hypothetical arguments for and against harm to others and the public interest.[59]

## Conclusion

NFP has not carried its burden that these exists a substantial likelihood that it will prevail on the merits or that an preliminary injunction must issue to prevent irreparable harm. Potential harm to third parties or public interest do not support such relief. I recommend that the Court deny the motion for preliminary injunction.

As I suggested to counsel at the conclusion of final argument, the parties should consider foregoing a ruling by the District Judge on this recommendation and a possible interlocutory appeal from that ruling and instead request an consolidated hearing with a trial on the merits under Federal Rule of Civil Procedure 65(a)(2). After consultation with the District Judge, a request for mediation may also be appropriate.


Dated: April 23, 2018                                     s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge

---

[59] ECF # 44, at 16-17; ECF # 43 at 24.

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[60]

---

[60] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).