# AFFIDAVIT OF KATHRYN B. FOX

STATE OF CALIFORNIA )
                                       ) SS:
COUNTY OF SAN DIEGO )

I, Kathryn B. Fox, hereby deposes and states that I have personal knowledge of the following facts:

1. I am an associate with the law firm Buchalter, APC and our firm has been retained to serve as counsel for Plaintiff NPF Franchising, LLC ("NPF") in Case No. 1:18-cv-00277 in the Northern District of Ohio, Eastern Division. We are counsel with Ohio-based Sherman Boseman, and have been admitted *pro hac vice* in this matter. I make this Affidavit based upon my personal knowledge and/or my review of the files of Buchalter, APC as counsel for NPF in the present matter.

2. On August 24, 2018, the Court admitted me and the shareholder in this matter, Tracy A. WArren, *pro hac vice* to represent NPF in this matter. Immediately, our office began working diligently with NPF's former counsel – Roman Meyers in Cleveland, Ohio – to take control of the litigation by requesting that all the files and documents be transferred to our office in San Diego, California. Before our office had an opportunity to receive and review all the documents that may be responsive to Defendants' discovery requests, we requested a brief extension of time to respond until August 31, 2018 to gain a better understanding of the facts and triage the case to ensure compliance with Plaintiff's discovery obligations. Defendants granted the brief extension.

3. We soon learned that more than 10,000 pages of documents needed to be reviewed in order to properly and accurately respond to Defendants' discovery requests. There was no possible way to complete a review of all these documents in the short

window of time granted; therefore, our office requested a more reasonable extension until September 28, 2018 to respond to Defendants' discovery requests. Defendants refused to grant an extension that was clearly necessary to review documents and provide Defendants with all of the responsive information they requested.

4. On September 14, 2018, just 10 days after the status conference and approximately 21 days after our office entered the case, Defendants' counsel prematurely filed a Motion to Compel discovery responses and the production of documents they already knew Plaintiff's counsel was feverishly reviewing. While NPF continued to work in good faith to fully and completely respond to Defendants' discovery requests, these efforts were hamstrung by having to prepare an Opposition to a Motion to Compel that should have never been filed without meeting and conferring.

5. In addition, on September 17, Defendants unilaterally and improperly noticed depositions for NPF Media, LLC, NPFTV and the Cleveland Comets, thereby creating another unnecessary discovery dispute that slowed down Plaintiff's efforts to comply with its discovery obligations. Attached hereto as Exhibits 1-4 are true and correct copies of our office's objections and responses. Although Defendants were made aware of these glaring defects and Plaintiff's willingness to work in good faith to correct them, they simply issued defective subpoenas and, again, Plaintiff was required to prepare and submit objections. Attached hereto as Exhibits 5-7 are true and correct copies of our office's objections and responses to the revised subpoenas.

6. Since our office substituted into this matter as NPF's counsel, NPF has: (a) provided a formal demand to Defendants on September 17 as required by the Court; (b) served objections and responses to Defendants' Third Set of Requests for Interrogatories

and Documents and produced over 1,000 pages of relevant data, (c) offered the identity of over 30 anticipated witnesses as well as other facts and information relevant to this matter while preserving its objections; (d) subpoenaed documents and the depositions of USA Softball CEO Craig Cress, USA Softball Director of National Teams Chris Sebren and USA Softball CFO Mark Loehrs; (e) subpoenaed documents and the depositions of Houston Museum of Natural Science officers because Joel Bartsch is its President and consistently uses the Museum's email system to communicate with softball personnel, as evidenced by emails produced by USA Softball in this litigation; (f) subpoenaed documents and depositions from business partners of Joel Bartsch and the Houston Museum of Natural Science; (g) objected to the Defendants' procedurally incorrect and unilaterally noticed deposition of the Cleveland Comets, a non-party to this action; (h) objected to the Defendants' procedurally incorrect and unilaterally noticed deposition of NPF Media, LLC a non-party to this action; (i) objected to the Defendants' procedurally incorrect and unilaterally noticed deposition of NPFTV, a non-party to this action and a non-existing entity; (j) objected to the Defendants' unilaterally noticed second deposition of NPF Franchising, LLC; (k) requested opposing counsel William Harter meet and confer on dates for depositions that are mutually agreeable to the parties and before the current discovery cutoff date of October 15; (l) requested USA Softball counsel John Falcone meet and confer and provide dates for depositions that are mutually agreeable to the parties and before the current discovery cutoff date of October 15 (for which available dates, at that time, were outside the discovery cutoff); (m) continued to wait for Defendants to produce ScrapYard Fastpitch players' contracts due since July 13, 2018 in response to Plaintiff's First Set of Requests for Production of Documents; (n) begun reviewing Defendants'

proposed stipulated protective order that was first submitted to Plaintiff on September 28; (o) informed opposing counsel (again) through objections that counsel for NPF is not currently authorized to accept service of deposition notices or subpoenas for The Aussie Spirit, The Beijing Shougang Eagles, the USSSA Pride or the Chicago Bandits; (p) informed opposing counsel through objections that NPFTV is not a legal entity capable of being deposed; (q) requested opposing counsel withdraw his Motion to Compel for his failure to meet and confer and as unnecessary; (r) filed an Opposition to the Motion to Compel; (s) supplemented Plaintiff's production with additional documents related to USA Softball; and (t) continued to work in good faith with Defendants to identify mutually agreeable deposition dates and to ensure that all relevant discovery has been produced. Attached hereto as Exhibit 8 is a true and correct copy of one of the meet and confer letters.

7. Among its other efforts, NPF subpoenaed for deposition USA Softball officers Craig Cress, Chris Sebren, and Mark Loehrs; representatives and affiliates of the Houston Museum of Natural Science T. Mark Kelly, Paul Bernhard and Stephen Sachnik; and Defendant Joel Bartsch's former business associate, Bryan Beatty.

8. On October 10, 2018, the Court ruled that the subpoenaed depositions could proceed. That same day, our office confirmed that NPF would proceed with the depositions and provided Defendants' counsel with the information needed to participate.

9. On October 11, 2018, the day after the Court's status conference, our office appeared by video conference for the deposition of Chris Sebren (Director of National Teams for USA Softball) and Mark Loehrs (CFO of USA Softball). Immediately, Mr. Sebren and his lawyer, John Falcone, contended that Mr. Sebren was testifying as an

individual and not as a representative of USA Softball, thereby depriving NPF of an opportunity to depose him as a corporate representative. In addition, neither Mr. Sebren nor Mr. Loehrs produced a single document responsive to the subpoena duces tecum. NPF was also precluded from deposing Mr. Cress, who was not made available prior to the October 15 discovery cutoff.

10. On October 12, our office sought to take the depositions of the individuals associated with the Houston Museum of Natural Science, three of whom were represented by Defendants' counsel. Defendants' counsel wholly refused to produce Mr. Bernhard for deposition prior to the discovery cut-off. In their correspondence, Defendants' counsel stated that they would "work to line up a new date for him between now and October 15, 2018, however, given the other issues and items in play in this case over the next two weeks, that seems unlikely." Defendants' counsel never provided any available dates for Mr. Bernhard's deposition.

11. Additionally, Defendants' counsel and the witness simply failed to appear for the deposition of Stephen Sachnik on October 15, 2018. Defendants' counsel previously acknowledged receipt of the subpoena, but never informed my office that they did not intend to appear, Defendants' counsel contended – after the fact – that the non-appearance was based upon their belief that service was ineffective. Accordingly, NPF was only able to proceed with the deposition of T. Mark Kelly.

12. Despite Defendants' attempts to obstruct discovery, NPF discovered substantial evidence that necessitate additional efforts. The testimony of the witnesses who appeared for deposition not only revealed financial improprieties by Defendant Joel Bartsch and third party, USA Softball, but cemented the need for Plaintiff to depose

additional witnesses, including persons who were timely served with subpoenas but who Defendants' counsel stated were unavailable for deposition prior to the discovery cutoff. As transcripts of the depositions are not yet available, below is my summary of the witnesses' relevant testimony.

13. Mr. Sebren, Director of National Teams for USA Softball, testified that in mid to late 2017, he was aware of conversations between Defendant Bartsch and Craig Cress, Executive Director of USA Softball, about starting a new, independent softball league. Mr. Sebren also testified that he was aware of a payment of $250,000 by Defendant Bartsch to USA Softball, and that $125,000 of this was for the Olympics. He testified that Mr. Cress would know the purpose of the remaining $125,000. Further, in a text message sent from Mr. Bartsch to Mr. Cress on the same day the payment was made, Mr. Bartsch stated that the remaining $125,000 was for "staff/start up costs for pro league if board approves." Mr. Sebren, however, testified that only Mr. Cress could confirm the payment's purpose. Mr. Sebren also testified that Mr. Cress would be the best person to ask regarding whether the Defendants and USA Softball were still planning to attempting to form an independent softball league.

14. Mark Loehrs, Chief Financial Officer for USA Softball, testified that the $250,000 payment to USA Softball in September 2017 was from Paul Bernhard and that it was not a donation. He testified that in September 2017, Mr. Cress told him to deposit the money and await further instructions. He also testified that in December 2018, Mr. Cress instructed him to keep $125,000 as a donation to USA Softball, and to transfer the remaining $125,000 to Defendant Bartsch. Moreover, he testified that he sent a letter to Defendant Bartsch confirming receipt of the donation, which would enable Defendant

Bartsch to claim the tax deduction, despite the fact that Mr. Bernhard made the transfer. Despite processing the transfers, Mr. Loehrs testified that he had no knowledge of their purpose and only Mr. Cress would know any further. Mr. Loehrs also testified that he did not bring documents as requested by the subpoena because he was previously instructed only to bring four (4) pages showing confirmation of the above-referenced wire transfers. He testified, however, that he has additional records showing donations to and payments from USA Softball, including records showing USA Softball earnings from ticket sales, merchandise sales, sponsors, publications, and concessions, all of which go to damages.

15. T. Mark Kelly, Chairman of the Board of the Houston Museum of Natural Science ("HMNS"), testified that he had no knowledge of Defendant Bartsch's dealings with USA Softball. He also testified that any questions about HMNS' finances, including the over $280,000 annual salary paid to Defendant Bartsch as HMNS' President would best be answered by HMNS' Chief Financial Officer, Stephen Sachnik, who failed to appear for deposition.

16. NPF properly subpoenaed and sought to take the depositions of Craig Cress, Paul Bernhard and Stephen Sachnik prior to the discovery cutoff. None of these individuals were made available to Plaintiff for deposition prior to the discovery cutoff, and Plaintiff even took a notice of non-appearance for the deposition of Mr. Sachnik on October 15, 2018. These depositions are imperative.

17. Mr. Cress is the only individual with knowledge of Defendant Bartsch's attempts to work with USA Softball to set up a new, independent softball league. He is the only person at USA Softball with knowledge of the purpose behind Defendant Bartsch's instruction to Mr. Bernhard to make a $250,000 donation to USA Softball. Moreover, he

is the only person with knowledge of the scope of Defendant May's involvement and influence at USA Softball.

18. Mr. Bernhard is the only individual that can explain why he made a $250,000 wire transfer to Oklahoma-based, non-profit USA Softball from Austin, Texas. He is the only person that can explain whether he authorized half of his transfer to be wired to Defendant Bartsch. This is necessary to the prosecution of Plaintiff's claims because, after Mr. Bernard wired the money, Mr. Bartsch was able to foreclose Plaintiff's opportunities to work with USA Softball, thus causing losses in ticket sales, merchandise sales, sponsors, publications, and concessions.

19. Mr. Sachnik is the appropriate person question about how when Mr. Bernhard's firm was retained by HMNS, the financial details of the contract, how Mr. Bernhard's firm was selected for the job, and whether Defendant Bartsch has used HMNS as a conduit for financing his softball dealings. HMNS' financial records related to Defendant Bartsch's salary and any of his cash and non-cash donations and wire transfers are also imperative to the prosecution of Plaintiff's case.

20. Lastly, based upon the testimony and documents produced thus far, NPF finds it necessary to depose or obtain additional records from media outlets that cover women's professional fastpitch softball. These entities (e.g., ESPN and FloMedia) also possess information relevant to how media coverage of Plaintiff's league and games changed after Defendants left the League and began competing alongside USA Softball.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Kathryn B. Fox