IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NPF FRANCHISING, LLC, | ) | CASE NO 1:18-cv-00277 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN |
| | ) | |
| SY DAWGS, LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**JOINT MOTION OF KAREN JOHNS, LOVIE JUNG, AND USA SOFTBALL, INC. FOR A PROTECTIVE ORDER**

NOW COME non-parties Karen Johns ("Johns"), Lovie Jung ("Jung"), and USA Softball, Inc. ("USA Softball"), by and through their undersigned counsel, to hereby respectfully move this Court, pursuant to Fed. R. Civ. P. 26(c) for a protective order. Specifically, Movants request an order under Fed. R. Civ. P. 26(c)(1)(A) which prohibits discovery from Johns and Jung, or, in the alternative, an order under Fed. R. Civ. P. 26(c)(1)(D) and (G) which limits the topics (and time) of such discovery and which preserves the confidentiality of the information sought.

Movants are not parties to this action but have been served with subpoenas by Plaintiff NPF Franchising, LLC ("NPF"). This Motion is made specifically with respect to the January 9, 2019 Subpoena directed to Johns and the January 29, 2019 Subpoena directed to Jung.[1] *True and accurate copies of the Johns and Jung Subpoenas are attached as Exhibits A and B.* Johns and Jung are members of the USA Women's Softball National Team Selection Committee (the

---

[1] As of the filing of this Motion, Jung has not been formally served with her Subpoena, notwithstanding that it purports to require her to appear for a deposition and produce 54 categories of documents within less than two weeks (by February 19). Nevertheless, as the discovery sought from Johns and Jung is virtually identical, issues surrounding this Subpoena are raised herein for judicial economy. All potential objections to this Subpoena on grounds of improper service or insufficient time to comply are expressly reserved.

"Committee"). The Subpoenas purport to require Johns and Jung to produce fifty-four (54) categories of documents, all pertaining to the operations of the Committee and its procedures for selecting coaches and athletes for the USA Women's National Team (misidentified in the subpoena as the "women's Olympic team"), and to submit to depositions on those same 54 topics.

Johns and Jung appear to have been targeted by NPF solely due to their association with USA Softball as members of the Committee, as part of NPF's ongoing efforts to harass USA Softball (which already has responded to extensive document requests and submitted representatives to four depositions herein). In addition, USA Softball has confidentiality agreements in place with both Johns and Jung relating to their work on the Committee, and hence it joins in this Motion for purposes of enforcing those agreements, as well as protecting its other Committee members.

Movants object to the discovery sought by NPF for the following reasons: (1) The discovery sought is beyond the scope of discovery as it is not relevant to the claims raised by the parties in this case; (2) USA Softball and its representatives already have produced over 3,400 pages of documents and given four depositions, lasting over twenty hours, such that further discovery directed to USA Softball, its officers, or members of the Committee is unduly burdensome; and, (3) Johns and Jung executed Covenants of Confidentiality with USA Softball which prohibit disclosure of the requested information. *True and accurate copies of the Covenants of Confidentiality are attached as Exhibits C and D.* Despite the foregoing objections, NPF has refused to cooperate with Movants to negotiate any limitations upon the discovery sought (and even indicated to the undersigned that additional unspecified documents must be produced by USA Softball), thereby rendering this Motion necessary.

Movants request that this Court issue an order prohibiting NPF from pursuing any further

discovery directed to USA Softball or members of the Committee. This includes, but is not limited to, an order prohibiting NPF from conducting the depositions of Johns and Jung. In the alternative, Movants request issuance of a protective order which limits the scope of discovery permitted from Johns and Jung, including reasonable limitations on the length of any depositions and adequate confidentiality protections. The reasons supporting this Motion are more fully discussed in the attached Memorandum in Support.

Respectfully Submitted,

**Critchfield, Critchfield & Johnston, Ltd.**

By: */s/ Steven J. Shrock*
     Steven J. Shrock (#0060025)
     Patrick Noser (#0075144)
     Monica E. Russell (#0075247)
     138 East Jackson Street
     Millersburg, Ohio 44654
     Email: shrock@ccj.com
             noser@ccj.com
             russell@ccj.com
     PH: (330) 674-3055
     FAX: (330) 674-4469

*Attorneys for Non-Parties USA Softball, Inc., Karen Johns, and Lovie Jung*

**MEMORANDUM IN SUPPORT OF MOTION**

I. **INTRODUCTION**

Plaintiff NPF Franchising, LLC ("NPF") operates the National Pro Fastpitch League. *See Joint Report of Parties, Doc #30*. Defendant Scrap Yard Dawgs, which is owned by Defendant SY Dawgs, LLC ("SY Dawgs"), participated in NPF's League. *Id.* NPF filed its Second Amended Complaint in this action on June 6, 2018 against a variety of defendants, including SY Dawgs, Joel Bartsch ("Bartsch"), Scrap Yard Fast Pitch, LLC, and Connie May ("May"). In its Second Amended Complaint, NPF alleges that SY Dawgs violated the terms of a Franchise Agreement and SY Dawgs and Bartsch, the owner of SY Dawgs, violated a Non-Compete Agreement. *See Second Amended Complaint, Doc #54*. In particular, NPF claims that Bartsch unlawfully competed with NPF by forming a new softball team under the name of Scrap Yard Fast Pitch, in direct competition with NPF's league. NPF seeks injunctive relief against SY Dawgs and Bartsch and damages against the defendants in excess of $75,000.00. *Id.*

Notably, NPF's allegations and claims focus entirely upon the efforts of Bartsch and May (and their respective entities) to form an alternate pro softball league.

USA Softball is not a party to this case. USA Softball is an Oklahoma non-profit corporation with its only offices located in Oklahoma City, Oklahoma. *See Affidavit of Craig A. Cress, Chief Executive Officer of USA Softball, Inc., attached as Exhibit E.* It is the National Governing Body of softball in the United States, pursuant to the Amateur Sports Act of 1978. USA Softball adopts and revises rules of play known as the "Official Rules of Softball," which apply to USA Softball's championship play events; participates in international competitions; and associates with a network of state/metro associations who promote amateur softball throughout the United States. Furthermore, USA Softball, in conjunction with the United States Olympic

Committee and athlete representatives, adopts rules governing the selection of the Women's and Men's National Softball teams and appoints members to the USA Women's and Men's Softball National Selection Committee. The Women's and Men's Selection Committee members are responsible for selecting which athletes are invited to represent the United States on its Women's and Men's National Softball Teams. There are approximately 135,000 teams associated with USA Softball, representing a membership of more than 1,500,000 people. *Id.*

In 2017, USA Softball was approached by Bartsch and explored the possibility of forming a women's softball league with him. They never finalized any agreements regarding such a league, and such a league was never formed. USA Softball was notified by NPF that Bartsch would be in violation of a contractual agreement with NPF if he formed another league, and thereafter, USA Softball did not pursue any further exploration with Bartsch about forming a new league. *Id.*

Similarly, neither Johns nor Jung are parties to this action. They are individual members of the USA Women's Softball National Team Selection Committee (the "Committee"), residing in Alabama and California, respectively. Prior testimony herein has established that the limited discussions between USA Softball and Bartsch pertaining to possible collaboration on an "alternate league" did not involve the Committee or any of its members, nor were they even made aware of such events. Although the Subpoenas directed to Johns and Jung each purport to request documents and testimony from them "individually", each of the 54 categories of documents/deposition topics specifically relate to the Committee and its work.

## II.     DISCOVERY DIRECTED TO USA SOFTBALL

NPF has pursued discovery in this matter from USA Softball, its officers, and its employees aggressively. To date, USA Softball already has submitted to four depositions and responded to numerous subpoenas *duces tecum*, described below:

(1) <u>NPF's June 1, 2018 Subpoena Duces Tecum directed to USA Softball</u>

This Subpoena required USA Softball to produce all documents and communications between USA Softball and Joel Bartsch, Connie May, SY Dawgs, or SY Fast Pitch relating to women's professional softball, training camps, games, exhibitions and tournaments. *A true and accurate copy of this Subpoena is attached as Exhibit F.* USA Softball promptly responded to this subpoena and produced 2,804 pages of documents. (It later supplemented its production with 45 additional pages of documents.) These documents included, for the relevant time period, all correspondence between USA Softball representatives and Joel Bartsch and Connie May; any agreements between USA Softball and Scrap Yard Dawgs; and any documents relating to payments between USA Softball and Joel Bartsch.

(2) <u>NPF's September 19, 2018 Subpoena to Testify at Deposition directed to Mark Loehrs, Chief Financial Officer of USA Softball</u>

This Subpoena required Mark Loehrs to appear for deposition on October 11, 2018, and to produce fifty-two (52) categories of documents, which included, but were not limited to: (a) communications regarding the pending lawsuit; (b) communications related to starting a softball team/league sent between Loehrs and Bartsch, May, SY Dawgs, Scrap Yard Fast Pitch, LLC, or KTC Interests, LLC; (c) communications with said individuals/entities related to venues for games; (d) payments received by USA Softball from said individuals/entities; (e) communications between the United States Olympic Committee and USA Softball regarding said persons; (f) communications and documents regarding selection of players and coaches for the USA Softball A or B teams from 2017 to present; (g) documentation relating to payment for coaches and athletes for USA Softball; (h) communications with coaches from Jan. 1, 2016 to present; (i) corporate organizational documents of USA Softball; and (j) information concerning USA Softball sponsorship. *A true and accurate copy of this Subpoena is attached as Exhibit G.*

USA Softball's counsel objected to the subpoena. *A true and accurate copy of Mr. Falcone's Letter to Mr. Boseman is attached as Exhibit H*. The grounds for the objection included that NPF failed to take reasonable steps to avoid imposing an undue burden, given that USA Softball already had produced 2,804 documents; the requests in the subpoena were overly broad, unduly burdensome, and not relevant; the subpoena failed to provide a reasonable time to comply; the documents requested are confidential and property of USA Softball, not the individual subpoena recipients; and disclosure of the information which is confidential commercial information of USA Softball would lead to competitive harm to USA Softball.

Subject to this objection, USA Softball produced Loehrs for deposition. His deposition lasted approximately three hours.

(3) <u>NPF's September 19, 2018 Subpoena to Testify at Deposition directed to Chris Sebren, Director of National Teams for USA Softball.</u>

This Subpoena required Chris Sebren to appear for deposition on October 11, 2018, and to produce the same fifty-two (52) categories of documents referenced in Loehrs' subpoena. *A true and accurate copy of this Subpoena is attached as Exhibit I.* Counsel for USA Softball objected on the grounds that Sebren had not been properly served, and further incorporated the objections to the document production that were raised in response to Loehrs' subpoena. *A true and accurate copy of Mr. Falcone's Letter to Mr. Boseman is attached as Exhibit J.*

Subject to this objection, USA Softball produced Sebren for deposition as requested. His deposition lasted approximately six hours.

(4) <u>NPF's September 19, 2018 Subpoena to Testify at Deposition directed to Craig Cress, Executive Director of USA Softball</u>

This Subpoena required Craig Cress to appear for deposition on October 11, 2018, and to produce the same fifty-two (52) categories of documents referenced in Loehrs' and Sebren's

4

subpoenas. *A true and accurate copy of this Subpoena is attached as Exhibit K.* As with Sebren, USA Softball objected on the grounds that Cress had not been properly served, and again incorporated the objections to the document production that were raised in regard to the others. *See Exhibit J.* Cress could not appear for deposition as he was traveling at the time.

(5) <u>NPF's November 28, 2018 Subpoenas directed to USA Softball, Inc.</u>

NPF issued a subpoena requiring a corporate representative of USA Softball to appear for deposition on December 13, 2018 and to testify regarding twenty-two (22) subjects, including all profits, donations, and revenue earned by USA Softball from 2015 to present; travel and lodging arrangements for USA Softball athletes and coaches; contract discussions, negotiations, and agreements with USA Softball athletes and coaches; and selection of athletes for the U.S. National Team. NPF also issued, on the same day, another subpoena *duces tecum* to USA Softball requiring it to produce another seventy-two (72) categories of documents covering a broad range of topics, some of which mirrored the documents previously requested in the subpoenas to individuals described in above and documents related to the specified deposition subjects. *True and accurate copies of these Subpoena are attached as Exhibits L-1 and L-2.*

USA Softball served a lengthy written objection to this latter Subpoena. *A true and accurate copy of Mr. Falcone's Letter to Ms. Fox is attached as Exhibit M.* Nevertheless, subject to its objections, USA Softball produced an additional 583 pages of documents to NPF (bringing its total production to over 3,400 pages). The documents produced included materials regarding USA Softball and the Committee that were publicly available on USA Softball's website or which were otherwise available online through various government agencies. USA Softball also produced Craig Cress to testify as its corporate representative, as described below.

In response to the November 28, 2018 document subpoena, USA Softball did not produce

5

detailed donor information (other than information regarding donations made by Bartsch), contracts with ESPN or other media entities, communications and documents regarding selection of players for the national teams, or communications with USA Softball coaches.

(6) <u>NPF's November 28, 2018 Subpoena to Testify at Deposition directed to Craig Cress, Executive Director of USA Softball</u>

This Subpoena required Craig Cress to appear for deposition on December 12, 2018. *A true and accurate copy of the Subpoena is attached as Exhibit N.* Cress actually appeared for two separate depositions, one in his individual capacity and another as the corporate representative for USA Softball. His depositions lasted two days and a total of approximately thirteen (13) hours.

USA Softball has acted in good faith throughout this discovery process and has incurred substantial expenses related to the production of documents in response to NPF's subpoenas and attendance at above described deposition. USA Softball estimates its expenses related to this matter to date to be approximately $20,000.00, including its attorney fees. *See USA Softball Affidavit, Exhibit E.*

**III. DISCOVERY DIRECTED TO MEMBERS OF THE USA WOMEN'S SOFTBALL NATIONAL TEAM SELECTION COMMITTEE**

(1) <u>NPF's January 9, 2019 Subpoena to Testify at Deposition directed to Karen Johns</u>.

This Subpoena required Johns to appear for deposition on January 24, 2019. *See Exhibit A.* Johns is the National Fastpitch Coaches' Association's representative on the Committee. Since Johns was not served in a timely manner, her local Alabama counsel objected on that basis and the parties eventually agreed to postpone her deposition until February 8, 2019. *A true and accurate copy of this email is attached as Exhibit Q.*

The Subpoena further requires Johns to produce fifty-four (54) categories of documents which include, but are not limited to the governing rules, regulations, policies and procedures of

the Committee; documents constituting a complaint or concern about the Committee; documents concerning prospective members of the Committee; documents concerning individuals who have been selected or invited to tryout as a member of the women's national teams or Olympic team; documents concerning policies and procedures of the Committee; and correspondence relating to the Committee between Johns and Ken Erikson, Craig Cress, Chris Sebren, Joel Bartsch, Connie May, or Scrap Yard Dawgs, LLC.

None of the categories of documents identified in the Johns Subpoena specifically concern the formation of a new professional women's softball team or league by Bartsch, May, or Scrap Yard Dawgs, LLC, nor any of the other matters alleged in Plaintiff's Complaint. Rather, the Johns Subpoena pertains entirely to Selection Committee matters.

USA Softball and Johns objected to the Subpoena on January 30, 2019. *See Exhibit O*. Their objections were three-fold: (1) the requested information was not relevant to the parties' claims in this lawsuit; (2) the requests were unduly burdensome and duplicative, considering the many depositions and subpoenas already submitted to by USA Softball; and (3) Johns' production of the requested information and deposition testimony would violate the confidentiality agreement she signed with USA Softball. NPF, through its counsel, responded via letter dated February 1, 2019, insisting that the deposition proceed and the documents be produced. *See Exhibit P*.

(2) <u>NPF's January 29, 2019 Subpoena to Testify at Deposition directed to Lovie Jung</u>.

This Subpoena is virtually identical to the one issued to Johns, requiring Jung to appear for deposition on February 19, 2019, and to produce the same fifty-four (54) categories of documents relating to the Committee and its activities. *See Exhibit B*. Jung is an athlete representative on the Committee. The Subpoena has not been served upon Jung as of yet, but the same objections stated in counsel's January 30, 2019 letter to NPF's counsel apply equally to the Jung subpoena as Jung

7

has no particular knowledge of the alleged attempts of May and/or Bartsch to form a new professional women's softball team or league, and her involvement with the Committee, like Johns', has no connection to the matters at issue in this lawsuit.

IV. **LAW AND ARGUMENT**

"'[D]istrict courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.' *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2) ). In determining the proper scope of discovery, a district court balances a party's right to discovery with the need to prevent 'fishing expeditions.' *Conti v. Am. Axle & Mfg.*, No. 08-1301, 326 F. App'x 900, at *907 (6th Cir. May 22, 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) )." *Hopp v. Arthur J. Gallagher & Co.,* No. 1:18-CV-507, 2019 WL 109368, at *1 (N.D. Ohio Jan. 4, 2019).

Fed. R. Civ. P. 26(c) provides that a person from whom discovery is sought may move for a protective order and this Court may, for good cause, issue an order to protect that person from annoyance, embarrassment, oppression, or undue burden or expense, including an order which forbids the requested discovery. "The Court in all instances 'must limit the frequency or extent of discovery otherwise allowed by these rules ... if it determines that ... the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Pizzuti v. Nashville Hosp. Capital, LLC*, No. 2:18-MC-0040, 2018 WL 5303061, at *3 (S.D. Ohio Oct. 25, 2018), citing Fed. R. Civ. P. 26(b)(2)(C)(i).

In this case, Movants ask this Court to issue an order preventing NPF from conducting any further discovery directed to USA Softball or any members of the Committee. This includes, but

is not limited to, an order preventing NPF from taking Johns' or Jung's depositions or requiring them to produce documents. Such an order is appropriate for the reasons stated below.

**A. Information concerning the Committee and its process for selecting athletes and coaches for the USA Women's Softball National Team is not permitted within the scope of discovery as it is not relevant to the claims raised by the parties in this case.**

"The scope of discovery under a subpoena is the same as the scope of discovery under Federal Rule of Civil Procedure 26. *Medical Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013)." *Worldwide Distribution, LLLP v. Everlotus Indus. Corp*, No. 1:16 MC 67, 2017 WL 553305, at *2 (N.D. Ohio Feb. 10, 2017).

Fed. Civ. P. R. 26(b)(1) states:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"The burden of demonstrating relevance is on the party seeking discovery." *Taylor v. Universal Auto Grp. I, Inc.*, No. 14-MC-50, 2015 WL 1810316, at *4 (S.D. Ohio Apr. 17, 2015), citing *Am. Elec. Power Co. v. United States,* 191 F.R.D. 132, 136 (S.D.Ohio 1999). "'Further, relevance is determined in the context of the elements of the cause of action…' *Conti v. Am. Axle & Mfg., Inc.,* 326 F. App'x 900, 907 (6th Cir.2000) (quoting *Bush v. Dictaphone Corp.,* 161 F.3d 363, 367 (6th Cir.1998))." *Id.*

The documents and testimony sought by NPF from Jung and Johns is not relevant to NPF's claims. Each of the first fifteen (15) requests/topics identified in the Johns and Jung Subpoenas (*Exhibits A and B*) specifically deal with policies, procedures, and/or participation in the Committee. The next nineteen (19) requests/topics address communications between Johns/Jung

and USA Softball representatives (National Team Coach Ken Eriksen, Craig Cress, or Chris Sebren) about Committee matters. The next fifteen (15) requests/topics address communications between Johns/Jung and Joel Bartsch or Connie May or their respective entities, but specifically pertaining to Committee matters (*not* the attempt to form an alternate league which is at issue in the lawsuit). Finally, the last five (5) requests/topics all seek information pertaining to the duties, selection process, and decisions made by the Committee. Every document request and deposition topic stated in the Johns and Jung Subpoenas pertains to the Committee.

There are no allegations, nor, to the best of Movants' knowledge, any testimony, or evidence that Johns or Jung have any knowledge of or connection to the allegations in the Second Amended Complaint. Johns and Jung possess no personal knowledge (and were not even aware of) Bartsch's alleged efforts to establish a new softball league with USA Softball. Similarly, Movants are not aware of any alleged connection or nexus between the Committee, its processes, deliberations, decisions, members, or any other aspect of its operations and the "attempt to form an alternate league" by Bartsch and/or May which is the basis of the allegations in the Second Amended Complaint. None of these requested documents or deposition topics appear "relevant to any party's claim or defense" as they do not pertain to Bartsch or May's alleged attempts to form a new professional women's softball team or league. Movants should be granted an order preventing the Johns and Jung depositions from taking place.

**B. NPF has already received substantial documentation and testimony from USA Softball and its representatives. Further discovery directed to USA Softball, its officers, or members of the USA Women's Softball National Selection Committee is unduly burdensome.**

Fed. R. Civ. P. 45(d)(1) requires anyone issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense" on the recipient. Fed. R. Civ. P. 26(b)(2)(C) allows a court to limit discovery which is "unreasonably cumulative or duplicative", which "can be

obtained from some other source that is more convenient, less burdensome, or less expensive", or when the party seeking discovery already "has had ample opportunity to obtain the information by discovery in the action."

"Whether a subpoena imposes an 'undue burden' is a case specific inquiry that turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.' *In re Caresource Mgmt. Group Co.,* 289 F.R.D. 251, 253 (S.D.Ohio 2013) (quoting *Am. Elec. Power Co. v. United States,* 191 F.R.D. 132, 136 (S.D.Ohio 1999)). Non-party status is also a relevant factor that weighs against disclosure. *U.S. v. Blue Cross Blue Shield of Mich.,* No. 10–cv–14155, 2012 WL 4513600, at *5 (E.D.Mich. Oct.1, 2012). *See also EEOC v. Ford Motor Credit Co.,* 26 F.3d 44, 47 (6th Cir.1994)." *Taylor, supra* at *4.

NPF already has received from USA Softball over 3,400 pages of documents and twenty (20) hours of testimony in response to NPF's prior subpoenas. Any information remotely related to the allegations stated in the Second Amended Complaint was produced long ago. Furthermore, subject to USA Softball's objections, USA Softball produced information to NPF about the Committee which is publicly available or otherwise not confidential. This information includes the Women's National Team Selection Procedures, which are available on USA Softball's website.

With respect to the breadth of the document request and the time period covered by it, documents requested by NPF in the Johns and Jung subpoenas are very broad and not limited to a specific time period, nor to the efforts by May or Bartsch to form a new softball league. Although the Subpoenas claim to be directed to Johns and Jung in their individual capacity, every single document request and deposition topic involves their role on the Committee and their interactions with USA Softball related to the Committee. There is no attempt by NPF whatsoever to limit these

11

requests to matters relevant to the Second Amended Complaint.

Having already received all relevant information from USA Softball, NPF is, at this point, conducting a fishing expedition into matters that are not remotely related to the allegations in this case, all in an effort to harass USA Softball and the Committee. Johns and Jung have no connection whatsoever to Bartsch, May, or either of their entities, nor to the events at issue in this lawsuit. Compliance with the Johns and Jung Subpoenas would unduly burden Movants.

**C. Johns and Jung executed a Covenant of Confidentiality with USA Softball on January 4, 2017 which prohibits disclosure of the requested information.**

Johns and Jung, in addition to the other members of the Committee, were required to execute a Covenant of Confidentiality with USA Softball. *See Exhibits C and D.* Movants object to the Johns and Jung Subpoena on the grounds that the information sought concerning the Committee's deliberations and selection of athletes and coaches for the USA Softball Men's and Women's National Softball Teams is confidential.

"Where, as here, a party objects to a subpoena on the basis that the information sought is confidential, a court engages in three inquiries: (1) whether the objecting party has shown that the information sought is proprietary and that its disclosure might be harmful; (2) whether the party seeking discovery has established that the information is relevant and necessary to the underlying action; and (3) whether the need for discovery outweighs the harm that will result from disclosure. *Id.* When discovery is sought from a non-party, a court 'should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non-party.'" *Worldwide Distribution, LLLP, supra at * 2.*

The information sought by NPF regarding the Committee's deliberations and selection of athletes and coaches is proprietary and disclosure of this information would be harmful. The Covenant of Confidentiality is intended to allow all matters relating to the Committee's evaluation,

12

discussions, and decisions regarding the ultimate selection of National Team members to remain confidential. It is in the best interests of everyone involved, whether as participants, Committee members, USA Softball, or the National Team coaches and members themselves, for the deliberations concerning these challenging decisions to not be publicly disclosed. USA Softball has an obligation to both its Committee members and the women athletes who strive for inclusion on the National Team, to foster an environment which allows for the utmost candor in analyzing, discussing, and choosing the best possible team, and having this process potentially disclosed to even a limited set of outsiders would have a chilling effect on the entire process. *See Exhibit E.*

There is no protective order in place in this case that would prevent public dissemination of the information requested in the Johns or Jung Subpoena. Furthermore, disclosure of this information to the parties themselves is not appropriate as they are actively involved in the larger community of United States softball, and hence their proximity to the athletes and matters discussed by the Committee renders them particularly inappropriate recipients of such information.

V. **CONCLUSION**

The Civil Rules provide for liberal but not unlimited discovery. With regard to non-parties in particular, common sense must prevail to rein in purely speculative inquiries.

NPF, while pursuing a case which this Court has found unlikely to succeed on the merits and while delinquent in its own document production and without submitting its own representatives to depositions, somehow keeps insisting upon more from USA Softball and those affiliated with it. Johns and Jung merely serve on the Selection Committee, with no discernable connection to the matters at issue herein. The Committee and its activities were in no way aware of or involved in the "alternate league" formation efforts which are relevant to this action. Its

policies, procedures, evaluations, discussions, and decisions are in no way an appropriate topic for discovery about whether Joel Bartsch violated his contracts with NPF.

Until and unless NPF can articulate some reasonable basis for seeking discovery from Johns and Jung about their service on the Committee, that discovery should be prohibited. Even then, if this somehow could be explained as "relevant to any party's claim or defense", the considerations of Rule 26(b)(1) with regard to whether the discovery sought is "proportional" likely would preclude this discovery, or (at a minimum) the vast majority of it.

This is especially true considering that USA Softball already has provided extensive testimony and documents to NPF which cover all matters even remotely related to the pending lawsuit. USA Softball already has incurred over $20,000.00 in expenses responding to Plaintiff's discovery herein, which costs will only continue to accrue if NPF is permitted to depose members of the Committee. Johns already has had to retain local Alabama counsel; Jung soon may need to retain California counsel. For non-parties with no stake in this action, these expenses are unduly burdensome. Furthermore, Johns and Jung are prohibited by the Covenants of Confidentiality which they signed with USA Softball from producing the requested information or testifying to the same. For these reasons, and as explained in detail in this Memorandum, further discovery by NPF directed to USA Softball or Committee members is unduly burdensome, unreasonably cumulative, duplicative, and not relevant or proportional to the needs of the case.

Movants request that this Court issue an order prohibiting NPF from pursuing any further discovery directed to USA Softball or its officers and employees, as well as members of the Committee, including the depositions and document production from Johns and Jung. Such an order is appropriate under Fed. Civ. R. P. 26(c) because the discovery sought is outside the scope of proper discovery, and in order to prevent annoyance, oppression, and undue burden and expense

to Movants.

In the alternative, if this Court is not inclined to issue an order prohibiting the Johns and Jung depositions from moving forward, Movants request that this Court issue an order limiting the scope of these depositions and the requested document production to documents (including correspondence) and conversations between Johns and (a) Connie May, (b) Joel Bartsch; (c) Scrap Yard Dawgs, LLC; and (d) Scrap Yard Fastpitch, LLC, which relate to the formation of a new Women's softball league.

To the extent that this Court requires production of any further documents from USA Softball or its Committee members, Movants further request that a protective order be issued so that it can mark documents to be produced as confidential or attorney's eyes only, as is necessary to protect USA Softball's confidential and proprietary information.

## VI. CERTIFICATION OF GOOD FAITH EFFORT TO RESOLVE DISPUTE

In accordance with Fed. Civ.R. 26(c), the undersigned hereby certifies that he did, in good faith, confer with counsel for NPF in an effort to resolve this dispute without court action. *See Exhibit O.*

           Respectfully Submitted,
           **Critchfield, Critchfield & Johnston, Ltd.**

           By: */s/ Steven J. Shrock*
                Steven J. Shrock (#0060025)
                Patrick Noser (#0075144)
                Monica E. Russell (#0075247)
                138 East Jackson Street
                Millersburg, Ohio 44654
                Email: shrock@ccj.com
                          noser@ccj.com
                          russell@ccj.com
                PH: (330) 674-3055
                FAX: (330) 674-4469
            *Attorneys for Non-Parties USA Softball, Inc., Karen Johns, and Lovie Jung*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 6th day of February, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

                                                         */s/ Steven J. Shrock*
                                                      Steven J. Shrock (#0060025)
                                                      Patrick Noser (#0075144)
                                                      Monica E. Russell (#0075247)

                                                      *Attorneys for Non-Parties USA Softball, Inc., Karen Johns, and Lovie Jung*

4811-3069-1974, v. 1