IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| NPF FRANCHISING, LLC, | ) <br> ) CASE NO. 1:18-cv-00277 <br> ) <br> ) Judge Donald C. Nugent <br> ) <br> ) Magistrate Judge William H. Baughman <br> ) <br> ) <br> ) <br> ) |
| Plaintiff, | |
| vs. | |
| SY DAWGS, LLC, JOEL BARTSCH, KTC INTERESTS, LLC, SCRAP YARD FASTPITCH, LLC AND CONNIE A. MAY | |
| Defendants. | |

**OPPOSITION TO JOINT MOTION OF KAREN JOHNS, LOVIE JUNG, AND USA SOFTBALL, INC. FOR A PROTECTIVE ORDER**

1

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE INFORMATION SOUGHT IN THESE DEPOSITIONS IS RELEVANT TO THE ISSUES IN THIS PENDING LITIGATION | 2 |
| | A. Defendants Gave About $80,000 to $100,000 in Free Benefits to USA Softball | 3 |
| | B. Defendant Connie May Was Given Access to the Confidential Discussions of the Selection Committee | 4 |
| III. | Defendant Connie May Improperly Influenced the Selection Committee and Award-Winning NPF Athletes Were Not Invited to the U.S. National Team Tryouts | 4 |
| IV. | USA Softball's PMQ Did Not Know What Procedures and Metrics Are Actually Used by the Selection Committee, And Testified The Selection Committee Members Would Have This Information | 5 |
| V. | THESE DEPOSITIONS ARE NOT UNDULY BURDENSOME | 6 |
| | A. NPF Cannot Obtain the Information Sought from a More Convenient Source | 7 |
| | B. The Proposed Deponents Will Not be Unduly Burdened by These Depositions | 8 |
| | C. USA Softball Will Not be Unduly Burdened by These Depositions | 9 |
| VI. | THE CONFIDENTIALITY AGREEMENTS ARE UNENFORCEABLE | 10 |
| | A. A Rule 45 Subpoena Supersedes a Confidentiality Agreement | 10 |
| | B. The Information and Documents Sought are Not Privileged And Are Discoverable | 11 |
| | C. Movants Have Waived Their Ability to Claim This Information is Confidential Because Craig Cress Testified Without Objection About the SELECTION COMMITTEE | 13 |
| VII. | THE DISCOVERY CUTOFF SHOULD BE EXTENDED FOR THE LIMITED PURPOSE OF PERMITTING THESE DEPOSITIONS TO MOVE FORWARD | 14 |
| VIII. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Dillard's, Inc.*,
   251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) ............................................................. 2, 6, 7
*Deman Data Systs., LLC v. Schessel*,
   2014 U.S. Dist. LEXIS 5728, 2014 WL 204248, at *2 (M.D.Pa. Jan. 16, 2014) ............ 12
*Edgefield Holdings v. Gilbert*,
   2018 U.S. Dist. LEXIS 34239, at *27 (N.D. Tex. Mar. 2, 2018) ....................................... 2
*Federal Open Mkt. Comm. v. Merrill*,
   443 U.S. 340, 362 (1979) ............................................................................................... 11
*Gonzales v. Google, Inc.*,
   234 F.R.D. 674, 684 (N.D.Cal. 2006) ............................................................................ 12
*Gotham Holdings, LP v. Health Grades, Inc.*,
   580 F.3d 664, 665 (7th Cir. 2009) ................................................................................. 10
*Innovative Therapies, Inc. v. Meents*,
   302 F.R.D. 364, 380 (D. Md. 2014) ............................................................................... 11
*Kebede v. SunTrust Mtge., Inc.*,
   612 F.App'x 839, 840 (6th Cir.2015) ............................................................................. 14
*Kohari v. Jessie*,
   2014 U.S. Dist. LEXIS 46033, at *6 (S.D. W. Va. Apr. 3, 2014) ................................... 11
*Mafcote, Inc. v. Fed. Ins. Co.*,
   2010 U.S. Dist. LEXIS 46471, at *11-12 (W.D. Ky. May 11, 2010) ............................. 11
*Marshall v. Bramer*,
   828 F.2d 355, 359 (6th Cir. Aug. 26, 1987) .................................................................. 14
*N.T. v. Children's Hosp. Med. Ctr.*,
   2017 U.S. Dist. LEXIS 122109, at *13 (S.D. Ohio Aug. 3, 2017) ................................. 14
*Rhiel v. Hook (In re Johnson)*,
   408 B.R. 115, 122 (Bankr. S.D.Ohio June 16, 2009), fn. 3 ........................................... 14
*Sonnino v. Univ. of Kan. Hosp. Auth.*,
   220 F.R.D. 633, 642 (D. Kan. 2004) .............................................................................. 11
*Transcor, Inc. v. Furney Charters, Inc.*,
   212 F.R.D. 588, 590 (D.Kan. 2003) ............................................................................... 11
*Westbrook v. Charlie Sciara & Son Produce Co.*,
   2008 U.S. Dist. LEXIS 24649, at *10 (W.D. Tenn. Mar. 27, 2008) ................................. 7

**RULES**

Fed. R. Civ. P. 26(b) ............................................................................................................. 2, 6
Fed. R. Civ. P. 26(b)(2)(i), (iii) ............................................................................................. 2, 6
Fed. R. Civ. P. 26(b)(2)(i) ......................................................................................................... 6
Fed. R. Civ. P.,45(d)(3)(A)(iv) ................................................................................................ 6
Fed. R. Civ. P. 45(d)(3)(A)(iii) .............................................................................................. 13

BN 35626000v5

I.  **INTRODUCTION**

This Motion is yet another example of non-party USA Softball, Inc. attempting to keep Defendants' misdeeds under wraps so that USA Softball's involvement in Defendants' unlawful competitive behavior against NPF is not brought to light. NPF alleges that Defendants breached the Non-Compete Agreement and Franchise Agreement in place between the Parties when they, among other things, began development of a new women's professional softball league in conjunction with USA Softball. [*See* Doc. 54.] USA Softball's Person Most Qualified ("PMQ"), its Executive Director, Craig Cress, even admits in his Affidavit filed with the instant Motion, that Defendant Joel Bartsch ("Bartsch") engaged in such competitive behaviors. [Doc. 158-5, PageID# 3437, ¶ 8.]

NPF contends that Defendants engaged in several specific improper competitive behaviors to the detriment of NPF. NPF contends the evidence will show **(1)** Defendants gave USA Softball approximately $80,000 to $100,000 in free benefits for the U.S. National Team training camp, including training facilities, ground transportation, lodging (approximately 50 rooms for 6-8 nights), and meals; **(2)** Defendant Connie May ("May") had improper access to the discussions of the USA Softball Selection Committee; **(3)** May improperly attempted to influence the Committee about which athletes should be invited to the U.S. National Teams tryouts; **(4)** the PMQ, Mr. Cress, lacked knowledge about the procedures and metrics actually used by the Selection Committee when deciding which athletes should be invited to tryouts; **(5)** USA Softball has refused to produce documents showing the procedures and metrics actually used by the Selection Committee even though its PMQ, Mr. Cress, admitted they are stored in his office; and **(6)** May's conduct resulted in the granting of invitations to the tryouts for athletes associated with Defendants to the detriment of NPF.

NPF has acted promptly, diligently and in good faith to conduct discovery about these matters. It deposed USA Softball's PMQ and, when he did not have the information and said members of the Committee would have it, NPF attempted to depose two individuals on the Selection Committee, Karen Johns and Lovie Jung (neither of whom are employed by USA

1

Softball[1] and neither of whom submitted an affidavit in support of this Motion). It is apparent that both Ms. Johns and Ms. Jung have information relevant to NPF's causes of action and claims for damages, the depositions are not burdensome, the Movants have not met their burdens to obtain a protective order, and USA Softball has waived any request for confidentiality. Accordingly, NPF respectfully requests the Court deny Movants' Motion.

**II.      THE INFORMATION SOUGHT IN THESE DEPOSITIONS IS RELEVANT TO THE ISSUES IN THIS PENDING LITIGATION**

Federal Rule of Civil Procedure ("Rule") 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense..." Fed. R. Civ. P. 26(b). "Once an objection to the relevance of the information sought is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008); *see* Fed. R. Civ. P. 26(b)(2)(i), (iii). Yet, the burden remains on the moving entity to quash or modify a subpoena. *Edgefield Holdings v. Gilbert*, 2018 U.S. Dist. LEXIS 34239, at *27 (N.D. Tex. Mar. 2, 2018) ("modification of a subpoena is preferable to quashing it outright")).

The information sought is relevant to NPF's causes of action and claims for damages. USA Softball's PMQ and Executive Director, Craig Cress, confirmed there is a quantifiable value for an athlete or organization to be associated with USA Softball. (Deposition of USA Softball PMQ (Exhibit ("Ex.") 1), 44:3-5.) For an NPF athlete, playing for the U.S. National Team garners prestige, which results in additional ticket sales and dollars, sponsors and media coverage of the NPF team on which that athlete plays which correlates to dollars. NPF contends that May was given improper access to the discussions of USA Softball's Selection Committee and that she exacted improper influence upon its members so that athletes associated with Defendants' teams would gain opportunities with USA Softball (and the U.S. National Team)

---

[1] NPF is informed and believes that neither Karen Johns nor Lovie Jung are employed by USA Softball, but that they volunteer as members of the SELECTION COMMITTEE. NPF's requests to confirm whether this is true have gone unanswered. However, no employment agreement or employment relationship is cited in the "Confidentiality Agreements".

instead of athletes associated with NPF. NPF contends Defendants' actions constitute unlawful competitive behaviors and interference with NPF's economic opportunities, diverting athletes, sponsors, tickets and dollars away from NPF, all of which caused damage to NPF.

NPF attempted to obtain information and documents regarding May's conduct and the procedures actually used by the Selection Committee from USA Softball's PMQ. However, Mr. Cress had lacked knowledge of USA Softball's Committee's actual practices and procedures. USA Softball failed to produce all documents requested by the PMQ subpoena. Specifically, Cress testified that <u>he did not know</u> **(1)** what procedures and metrics were actually used by the Selection Committee to determine which athletes received invitations the U.S. National Team tryouts, and **(2)** why NPF's award-winning athletes were not invited to the U.S. National Team tryouts when athletes related to Defendants' teams were highly-likely to have received invitations. Instead, Mr. Cress testified that the members of the Selection Committee would have this information. (*See* Ex. 1, 122:22-25, 124:25-125:5, 133:14-137:18.) Accordingly, NPF is entitled to obtain this information from members of the Committee, Karen Johns and Lovie Jung.

### A.     Defendants Gave About $80,000 to $100,000 in Free Benefits to USA Softball

Mr. Cress testified that Defendants provided USA Softball with the following benefits <u>free of charge</u> for a training camp for the U.S. National Team: training facilities, ground transportation, lodging (approximately 50 rooms for 6-8 nights), and meals. (Deposition of Craig Cress (Ex. 2), 112:16-116:12, 179:7-181:16.) **<u>He estimated that the value of the free benefits Defendants gave to USA Softball was between $80,000 and $100,000.</u>** (*Id*. at 112:16-116:12, 179:7-181:16.) He further testified that these free benefits were the main reason USA Softball chose to hold the training camp at Defendants' location rather than at a location associated with an NPF team. (*Id*. at 188:18-189:5.) NPF is entitled to conduct discovery about whether these free benefits resulted in May receiving improper access to and/or influence over the SELECTION COMMITTEE.

B. **Defendant Connie May Was Given Access to the Confidential Discussions of the Selection Committee**

During his deposition as the PMQ, Mr. Cress testified that there was <u>no concern</u> if May was given unfettered access to the Selection Committee's discussions when the U.S. National Team used Defendants' Scrap Yard Sports Complex[2] for the training camp. (Ex. 1, 151:4-152:5.) This, in conjunction with his sworn Affidavit wherein he attests to the importance that the Committee's communications, discussions and decisions remain confidential, shows that May's access to the discussions was improper. [*See* Doc. 158-5.] NPF contends that May's improper access was possible, in part, because Defendants provided between $80,000 and $100,000 of free benefits to USA Softball. NPF is entitled to conduct discovery about the extent of May's improper access, whether it was due to the $80,000 to $100,000 in free benefits given to USA Softball by Defendants, and the extent to which Defendants' conduct caused damage to NPF.

III. **DEFENDANT CONNIE MAY IMPROPERLY INFLUENCED THE SELECTION COMMITTEE AND AWARD-WINNING NPF ATHLETES WERE NOT INVITED TO THE U.S. NATIONAL TEAM TRYOUTS**

As the PMQ, Mr. Cress testified that even though Bartsch and May were not on the Selection Committee, May sent him an e-mail with her thoughts as to which athletes should play for the U.S. National Teams, labeling it "for your eyes only." (Ex. 1, 115:3-15, 116:14-21; 062218-1614-16.) Two-thirds of the athletes suggested by May were not only invited to the tryouts, **but actually made the U.S. National A and B Teams**. (*Id.* at 118:4-120:12.) Conversely, several of NPF's award-winning athletes were not selected for these teams. (*Id.* at 118:4-120:12, 121:23-124:19.) For example, NPF's Player of the Year (who was also named Offensive Player of the Year and was the stolen base leader) and NPF's Golden Glove Winner were not even invited to try out for the U.S. National Teams. (*Id.* at 121:23-122:25.) Similarly, the rookie of the year at Baylor who plays in the NPF was not invited to try out for the U.S. National Teams. (*Id.*) <u>When asked why the award-winning NPF athletes were not invited to the</u>

---

[2] The Scrap Yard Sports Complex is owned by Defendant KTC Interests, LLC, which is wholly owned by Defendant Joel Bartsch. [Stip. 12, Doc. 30, PageID# 364.]

tryouts for the U.S. National Teams, Mr. Cress testified: "I do not have an understanding of why not. I'm not on the Selection Committee." (*Id.* at 122:22-25.)

NPF is entitled to conduct discovery as to whether May's e-mail asserted improper influence upon the Selection Committee, so that athletes associated with Defendants received invitations to try out for the U.S. National Teams instead of more-qualified athletes associated with NPF teams. NPF should also be permitted to conduct discovery about whether the $80,000 to $100,000 in free benefits given to USA Softball from Defendants resulted in May gaining improper influence over the Committee. This is critical for NPF to prove its causes of action and claims for damages, and NPF should be permitted to obtain this information from members of the Selection Committee.

### IV. USA SOFTBALL'S PMQ DID NOT KNOW WHAT PROCEDURES AND METRICS ARE ACTUALLY USED BY THE SELECTION COMMITTEE, AND TESTIFIED THE SELECTION COMMITTEE MEMBERS WOULD HAVE THIS INFORMATION

In an effort to determine whether May's actions resulted in preferential treatment for athletes related to Defendants' teams to the detriment of NPF and its athletes, NPF attempted to obtain information from USA Softball's PMQ. NPF asked USA Softball's PMQ about the procedures and metrics actually used by the Committee to evaluate athletes and decide which athletes to invite to the tryouts. Yet, Mr. Cress did not have information or produce documents regarding the procedures or metrics used by the Committee to determine which athletes are invited to the tryouts. (Ex. 1, 122:22-25, 124:25-125:5.)

Mr. Cress also testified he could not be certain the procedures put in place and approved by the U.S. Olympic Committee were being followed by the Selection Committee because he was not on the Selection Committee and he had not educated himself (even though he was the PMQ) about whether such procedures were being followed. (Ex. 1, 133:14-137:18.) He further testified he maintains in his office documents evidencing the statistics for each candidate and the Committee's ratings of each candidate. (*Id.* at 134:20-136:1, 140:2-7.) Yet, these documents have not been produced by USA Softball. This is despite the fact NPF served four subpoenas

upon USA Softball requesting documents and communications regarding the selection of players/athletes for the U.S. National Teams from 2017 to the present. (Doc. 158-9, PageID# 3462-63, Nos. 28-29, 32; Doc. 158-11, PageID# 3473-74, Nos. 28-29, 32; Doc. 158-12, PageID# 3480, No. 18; Doc. 158-13, PageID# 3487, Nos. 28-29, 32.)

NPF is entitled to evaluate whether the procedures put in place and approved by the U.S. Olympic Committee were and are being followed because NPF contends its athletes were not given invitations to the U.S. National Teams tryouts due to the improper influence exacted by Defendants and collusive behavior by Defendants and USA Softball. If these procedures are not being followed, it provides further evidence Defendants breached their contractual agreements with NPF and tortuously interfered with their economic opportunities. NPF attempted to obtain this information from USA Softball's PMQ, but he lacked sufficient knowledge of the procedures actually used by the Selection Committee. Therefore, NPF should be permitted to obtain this relevant information from members of the Selection Committee, Karen Johns and Lovie Jung.

## V. THESE DEPOSITIONS ARE NOT UNDULY BURDENSOME

Federal Rule of Civil Procedure ("Rule") 26 states that a party has the right to obtain relevant, nonprivileged information and documents where its likely benefit outweighs the burden and expense of obtaining it. Fed. R. Civ. P. 26(b). To determine whether production poses an undue burden, the court considers the burden placed on the producing party, as well as the necessity of the information for the party seeking production, and whether the information can be obtained from more convenient sources. Fed. R. Civ. P. 26(b)(2)(i), 45(d)(3)(A)(iv).

If the party seeking discovery demonstrates that the requests are relevant to the claims or defenses in the pending action, "the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal citations omitted); *see* Fed. R. Civ. P. 26(b)(2)(i), (iii). "A general statement that discovery is unduly

burdensome, without more, is simply not enough to prohibit discovery of otherwise relevant information." *Anderson*, 251 F.R.D. at 311.

To determine whether good cause exists to issue a protective order and to determine its proper scope, the court "must balance the requesting party's need for discovery against the resisting party's claimed harm that will result from disclosure." *Westbrook v. Charlie Sciara & Son Produce Co.*, 2008 U.S. Dist. LEXIS 24649, at *10 (W.D. Tenn. Mar. 27, 2008) (citations omitted). Movants cannot meet their burden and their Motion should be denied.

A.  **NPF Cannot Obtain the Information Sought from a More Convenient Source**

As described above, NPF made multiple good faith and reasonable efforts to obtain information about Defendants' undue influence upon the Committee from the most convenient source – USA Softball's PMQ and Executive Director, Craig Cress. Yet, Ms. Cress did not have any knowledge about the procedures or metrics actually used by the Selection Committee.

NPF also attempted to obtain this information using document requests served upon USA Softball and Mr. Cress, but all responsive documents have not been produced. Mr. Cress testified that he maintains in his office documents evidencing the statistics for each candidate and the Committee's ratings of each candidate, (Ex. 1, 134:20-136:1, 140:2-7), but these documents have not been produced by USA Softball and all of NPF's efforts to obtain additional documents from USA Softball have been stonewalled.

Because Mr. Cress did not have the requisite knowledge, and USA Softball will not produce documents that may shed some light on whether May has been granted improper access and has exerted improper influence over the Selection Committee, NPF has been forced to attempt to gain the information by serving subpoenas to members of the Committee. In fact, it was Mr. Cress who testified that the members of the Selection Committee would be the proper individuals to depose regarding whether May attempted to and/or exacted undue influence upon the Committee to the detriment of NPF. (*See* Ex. 1, 122:22-25, 124:25-125:5, 133:14-137:18.) In light of Mr. Cress' lack of knowledge of these matters as discussed above, USA Softball's refusal to produce documents, and Mr. Cress' statements that the Selection Committee members

7

would have the information NPF seeks, NPF is entitled to depose members of the Selection Committee. Thus, NPF respectfully requests that the Court deny Movant's Motion and permit NPF to depose Selection Committee members Karen Johns and Lovie Jung.

### B. The Proposed Deponents Will Not be Unduly Burdened by These Depositions

In addition, the subpoenas comply with the requirements of Rules 26 and 45 in that the proposed dates, times and locations for the depositions are not unduly burdensome. In fact, NPF accommodated Ms. Johns' request that her deposition be rescheduled for a later, mutually-convenient date and time, only to be served with this Motion two days before it was to occur.

It is apparent from the conduct of Movants' counsel and Ms. Johns' counsel that any assertion that a deposition would unduly burden the deponents is without merit. NPF first served notice of Ms. Johns' deposition on December 14, 2018, setting her deposition for December 20, 2018, but her deposition did not move forward at that time. NPF then personally served Ms. Johns on January 16, 2019, setting her deposition for January 24, 2019.

Days before her deposition, Ms. Johns retained counsel who requested her deposition be continued. [*See* Doc. 158-18.] NPF agreed to do so and her deposition was reset to the mutually agreeable date of February 8, 2019. (A true and correct copy of Tracy A. Warren's e-mail dated January 24, 2019, is attached as Ex. 3.) On January 24, 2019, NPF's counsel even sent an e-mail to Ms. Johns' counsel offering to enter into a protective order, addressing the fact that three of USA Softball's executives had already been deposed, and stating that none of the three executives had claimed that a confidentiality agreement precluded them from testifying or producing documents. (Ex. 3.) Nearly a week later, on January 30, 2019, counsel for Movants sent a letter to NPF's counsel wherein he attempted to meet and confer about the deposition of Ms. Johns, writing that he was willing to discuss a protective order "so as to allow that deposition to continue as rescheduled." [Doc. 158-16, PageID# 3585.] <u>Movants' counsel therefore conceded that Ms. Johns' anticipated testimony is relevant to the action</u>.

On February 1, 2019, NPF's counsel attempted to resolve any issues so that the deposition of Ms. Johns would proceed on February 8, 2019. [Doc. 158-17.] NPF's counsel

8

requested clarification about the specifics of the confidentiality agreements and asserted that confidentiality had been waived given the testimony of USA Softball's executives and the production of some documents dealing with the Selection Committee (*e.g.*, May's email to Mr. Cress). [Doc. 158-17, PageID# 3592.] The letter also explained the relevance of Ms. Johns' testimony given that May was "granted 'special access' to the USA Selection Committee's conversations [and] sent emails to USA Softball on who they should select for the National Team (players who played for Defendants' teams)." [Doc. 158-17, PageID# 3592.] Even though NPF answered Movant's questions so that the deposition would "continue as rescheduled," Movants did not respond and, instead, filed this instant Motion.

NPF worked cooperatively to set the deposition for a date, time and location that was convenient to Ms. Johns and her counsel. The deposition was even set to take place via video conference at Ms. Johns' counsel's office. It is clear that NPF made all reasonable efforts to avoid any burden to Ms. Johns when scheduling her deposition. The relevance of the information sought overcomes any alleged, manufactured burden and the Motion should be denied.

In addition, although NPF has not yet served Ms. Jung with a subpoena, NPF intends to do so if this Motion is denied. As with Ms. Johns' deposition, the deposition of Ms. Jung will be scheduled for a mutually-convenient date, time and location.

### C.     USA Softball Will Not be Unduly Burdened by These Depositions

Similarly, USA Softball will not be unduly burdened if the depositions are ordered to proceed. The relevance of the information sought vastly outweighs any alleged burden to USA Softball. NPF initially sought to obtain this information from USA Softball's PMQ to limit any burden to third parties, but the PMQ did not have knowledge of these matters and USA Softball refused to produce documents containing this information. Therefore, NPF was forced to seek this information from members of the Selection Committee. Moreover, USA Softball did not object to questions about the Selection Committee during the deposition of its PMQ on the basis that the questions were unduly burdensome and should be precluded from attempting to insert that objection now. In all, the Motion should be denied.

9

## VI. THE CONFIDENTIALITY AGREEMENTS ARE UNENFORCEABLE

### A. A Rule 45 Subpoena Supersedes a Confidentiality Agreement

The Confidentiality Agreements signed by Karen Johns and Lovie Jung both provide that the confidentiality is not absolute: "I understand there may be other instances in which disclosure of information otherwise prohibited under the Covenant <u>may be required by law</u> and I further understand that <u>the Covenant does not prohibit disclosure in such instances</u>." [Doc. 158-3, PageID# 3433, ¶ 9 (emphasis added); Doc. 158-4, PageID# 3435, ¶ 9 (emphasis added).]

In *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009), the court upheld the plaintiff's motion to enforce a subpoena served on a third party pursuant to Rules 34(c) and 45 that sought documents related to an arbitration between the defendant and a third party because a confidentiality agreement between the defendant and the third party provided that materials from the arbitration could be disclosed in response to a subpoena. *Ibid.*, 580 F3d 664. The *Gotham* Court also found that even if the agreement had purported to block disclosure, such a provision would be ineffectual because, in part, the agreement only bound the parties to the agreement and no one argued that a recognized privilege applied to the subpoenaed documents. *Ibid.*, 580 F3d 664.

Here, the language of the Agreements shows that the parties to them (Movants USA Softball, Karen Johns and Lovie Jung) anticipated that information related to the Selection Committee could be ordered to be disclosed in a legal proceeding, including pursuant to a lawfully-issued Rule 45 subpoena. *See Ibid.*, 580 F.3d at 665. The Agreements specifically account for situations akin to the present situation, where a signatory to the Agreement is compelled by a subpoena to testify about matters concerning her service on the Selection Committee. Movants cannot hide behind these Agreements to avoid disclosing information they knew could be disclosed at the time of "contracting."

Moreover, even if the Agreements had attempted to block disclosure of such information without exception, such a provision is ineffectual. *Ibid*. "<u>Contracts bind only the parties. No one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of</u>

Civil Procedure will be cut off." *Ibid*. (emphasis added). Moreover, courts have recognized that a desire for confidentiality is not always honored in litigation. *Ibid*. Even concerns about confidentiality do not create a bar to disclosure of information sought by a Rule 45 subpoena. *Ibid*. Further, USA Softball is the national governing body of the sport of softball. Impropriety conducted by USA Softball should not be afforded a cloak of secrecy. Again, Movants recognized that matters concerning the Selection Committee did not come with an absolute right to confidentiality and, therefore, Movant's Motion should be denied.

### B. The Information and Documents Sought are Not Privileged And Are Discoverable

Generally, "only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena." *Kohari v. Jessie*, 2014 U.S. Dist. LEXIS 46033, at *6 (S.D. W. Va. Apr. 3, 2014); *citing Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D.Kan. 2003) (citation omitted). While an exception exists when the person objecting has a "personal right or privilege" in the information being sought, the court "may order production upon specified conditions if 'the party in whose behalf the subpoena was issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship...'" *Kohari,* 2014 U.S. Dist. LEXIS 46033, at *6-7; *Transcor*, 212 F.R.D. at 592.

"It is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that the they are confidential." *Mafcote, Inc. v. Fed. Ins. Co*., 2010 U.S. Dist. LEXIS 46471, at *11-12 (W.D. Ky. May 11, 2010) (emphasis added); *citing Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004) (*citing, e.g., Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979) ("There is no absolute privilege for trade secrets and similar confidential information . . . .") (emphasis added)). "Trade secret or commercially sensitive information must be 'important proprietary information' and the party challenging the subpoena must make 'a strong showing that it has historically sought to maintain the confidentiality of this information.'" *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 380 (D. Md. 2014); quoting

11

*Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D.Cal. 2006)); *Deman Data Systs., LLC v. Schessel*, 2014 U.S. Dist. LEXIS 5728, 2014 WL 204248, at *2 (M.D.Pa. Jan. 16, 2014) ("[t]he party resisting discovery must first establish that the information is a trade secret and that its disclosure would be harmful.").

Because these subpoenas do not seek to depose *employees* of USA Softball (*see* fn. 1), <u>USA Softball does not have standing to object to the depositions of Ms. Johns and Ms. Jung, unless it can show that the information sought is privileged</u>. An assertion of confidentiality does not meet this standard, and USA Softball has made no assertion that the information sought is privileged. In addition, Ms. Johns' sought and is using her own counsel not USA counsel. Any communications between USA counsel and Ms. Johns or Ms. Jung are discoverable and should be disclosed. Moreover, USA Softball cannot show that the disclosure of information about the Selection Committee would be harmful because Mr. Cress (as the PMQ) testified about the Committee without objection and because Mr. Cress testified that USA Softball and NPF are not competitors. (Ex. 2, 73:13-15.) Therefore, USA Softball cannot reasonably claim that information learned in the depositions could be used by NPF to compete against it. In light of the above, USA Softball's request for a protective order should be denied.

In addition, neither Ms. Johns nor Ms. Jung have properly moved this Court for a protective order because they (the proposed deponents) have not established that the information sought is irrelevant, that they will unduly burdened, or that they wish to keep this information confidential. Neither Karen Johns nor Lovie Jung submitted an affidavit in support of this Motion to make any showing as to why a protective order may be proper.

Accordingly, none of the Movants have met the threshold requirements to properly move this Court for a protective order. USA Softball's thinly veiled attempts to keep information about the Selection Committee – and Defendants' improper influence thereof – from coming to light should be denied along with this Motion.

### C. Movants Have Waived Their Ability to Claim This Information is Confidential Because Craig Cress Testified Without Objection About the SELECTION COMMITTEE

Rule 45 specifically provides that a subpoena will not be limited where the producing party has <u>waived</u> objections of privilege or other protected matters. Fed. R. Civ. P. 45(d)(3)(A)(iii). Movants have waived any ability to avoid discovery of matters involving the Selection Committee because USA Softball has already provided testimony and produced some documents (May's email to Mr. Cress) related to the Committee without a protective order.

Mr. Cress testified about the Selection Committee when he was produced as the PMQ for USA Softball. (Ex. 1, 124:25-125:5, 133:14-137:18.) <u>At no time during this line of questioning did counsel for USA Softball object on the grounds that the information sought was confidential.</u> (*Id*. at 124:25-125:5, 133:14-137:18.) In fact, during his deposition, counsel for USA Softball produced documents related to the Selection Committee in an attempt to refresh Mr. Cress' recollection about the metrics the Selection Committee is supposed to use. (*Id*. at 125:6-126:23.) USA Softball's counsel did so voluntarily and without objecting on the basis of confidentiality to questions about whether the Selection Committee followed those metrics. (*Id*. at 136:11-137:18.) When asked whether the Selection Committee actually follows the metrics set forth in the criteria produced by USA Softball's counsel, Mr. Cress testified: "<u>I cannot guarantee those procedures are followed.</u>" (*Id*. at 137:7-18.) He gave this testimony absent any objection that the metrics or whether the Selection Committee followed the metrics were confidential. (*Id*.)

Similarly, counsel for USA Softball did not object on the basis of confidentiality when Mr. Cress was asked about documents he has in his office that contain the metrics by which candidates are allegedly evaluated and the impressions of the Selection Committee members. (Ex. 1, 133:14-136:1.) It should also be noted that USA Softball's argument that because it has produced a certain number of documents it is somehow absolved of the duty to produce additional relevant, non-privileged documents, is not supported by the law.

Moreover, the documents produced by USA Softball in this case were <u>not</u> produced subject to a protective order. This includes the e-mail from May to Mr. Cress labeled "for your

eyes only" in which she suggested which athletes should play for the U.S. National Teams. (Ex. 1, 115:3-15, 116:14-21; 062218-1614-16.) *See N.T. v. Children's Hosp. Med. Ctr.*, 2017 U.S. Dist. LEXIS 122109, at *13 (S.D. Ohio Aug. 3, 2017) (designating documents as "confidential" may only be done in good faith).

By failing to object on the basis of confidentiality to questions pertaining to the Selection Committee, its procedures, its metrics, its discussions, and its decisions, Movants waived this objection. They cannot now attempt to limit discovery on matters about which USA Softball's PMQ testified freely. Their attempt to keep this information from coming to light should be seen as what it is – another attempt by USA Softball (the national governing body for the sport of softball) to improperly align itself with Defendants in this action to hide its financial transactions and dealings with Defendants. This should not be permitted, and the Motion should be denied.

## VII. THE DISCOVERY CUTOFF SHOULD BE EXTENDED FOR THE LIMITED PURPOSE OF PERMITTING THESE DEPOSITIONS TO MOVE FORWARD

It is well-established that "[t]he District Court […] has broad discretion in regulating discovery." *Kebede v. SunTrust Mtge., Inc.*, 612 F.App'x 839, 840 (6th Cir.2015). The discovery process and its deadline are not meant to be used as a weapon to suppress the discovery of relevant information. *See Rhiel v. Hook (In re Johnson)*, 408 B.R. 115, 122 (Bankr. S.D.Ohio June 16, 2009), fn. 3. Instead, discovery is intended to "permit parties to 'obtain the fullest possible knowledge of the issues and facts before trial.'" *Marshall v. Bramer*, 828 F.2d 355, 359 (6th Cir. Aug. 26, 1987). A scheduling order "may be modified" for "good cause and with the judge's consent." *See* Fed. R. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Moore v. Smith*, 2018 U.S. App. LEXIS 28270, at *7 (6th Cir. Oct. 4, 2018).

As discussed at length above, NPF has acted reasonably, promptly and in good faith when to obtain about Defendants' improper influence upon the Selection Committee. NPF stands prepared to take the Johns and Jung depositions immediately. NPF respectfully requests that the

Court continue the discovery cutoff only for the limited purpose of permitting NPF to take the depositions of Karen Johns and Lovie Jung.

## VIII. <u>CONCLUSION</u>

For the reasons set forth above, Movant's Motion should be denied in its entirety.

DATED: February 20, 2019

BUCHALTER
A Professional Corporation

By: */s/ Tracy A. Warren*
TRACY A. WARREN, Esq.
KATHRYN B. FOX, Esq.
Attorneys for Plaintiff
NPF FRANCHISING, LLC
Admitted *PRO HAC VICE*

F. Allen Boseman, Jr. (0084103)
Bradley A. Sherman (0063906)
SHERMAN BOSEMAN LEGAL GROUP
800 West St. Clair Avenue, 4th Floor
Cleveland, OH 44113
Telephone: 216.239.1414
Facsimile: 216.239.1316
Email: allen@shermanboseman.com
bradley@shermanboseman.com

Local Counsel for Plaintiff
NPF FRANCHISING, LLC

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing Opposition to Joint Motion of Karen Johns, Lovie Jung and USA Softball, Inc. for a Protective Order was electronically filed on this 20th day of February, 2019. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Tracy A. Warren*_____
TRACY A. WARREN, Esq.

Attorney for Plaintiff
NPF FRANCHISING, LLC
Admitted *PRO HAC VICE*
