IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NPF FRANCHISING, LLC, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 1:18-cv-00277 |
| | : | |
| vs. | : | Judge Donald C. Nugent |
| | : | |
| SY DAWGS, LLC, *et al.,* | : | Magistrate Judge William H. Baughman |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANTS' MEMORANDUM REGARDING CASE STATUS IN ADVANCE OF MARCH 1, 2019 STATUS CONFERENCE

Now come Defendants, by and through counsel, and file this Memorandum Regarding Case Status in Advance of the March 1, 2019 Status Conference.

At the December 18, 2018, Status Conference, the Court noted the ongoing discovery disputes in this action and ordered both parties to file any appropriate motions to compel discovery by December 28, 2018. The Court also extended discovery to March 1, 2019.

Since that Status Conference, developments regarding the following six topics have occurred, as discussed more fully herein:

1. The Court granted Defendants' Motion to Compel and denied NPF's Motion, but NPF failed to comply with the Court's Memorandum Opinion and Order.

2. NPF and its related companies failed to appear at properly noticed / subpoenaed depositions.

3. NPF issued subpoenas to various financial institutions seeking irrelevant documents, and the Affected Parties filed a Motion to Quash regarding the same.

4. NPF continued trying to stonewall Defendants' efforts to obtain relevant documents, including apparently misrepresenting that NPF's counsel represents a particular non-party.

5. NPF continued its irrelevant fishing expedition with USA Softball.

6. A second franchise from NPF's League has confirmed that Defendants have never caused it any damages and that it has never said otherwise to NPF.

## I. The Court granted Defendants' Motion to Compel and denied NPF's Motion, but NPF failed to comply with the Court's Memorandum Opinion and Order [Doc. 151].

On January 25, 2019, after the parties briefed their respective Motions to Compel, the Court issued a Memorandum Opinion and Order granting Defendants' Second Motion to Compel and ordering NPF and NPF Media, LLC to either (1) provide full and complete responses to all discovery within fourteen days; or (2) certify to the Court that they have fully responded to all of the discovery requests propounded by Defendants "and there is nothing responsive left to produce." [Doc. 151.] The Court also denied NPF's Motion to Compel.

NPF and NPF Media did neither.

On February 8, 2019, the deadline in the Order, Defendants received a single, heavily-redacted, 11-page document from NPF Media. NPF Media provided nothing for the vast majority of subpoena requests, and NPF provided nothing regarding the document requests and interrogatories to it. And, neither NPF Media nor NPF certified that their responses were complete.

Defendants' counsel wrote to NPF's counsel on February 9 to confirm that the single document was everything NPF and NPF Media intended to produce. NPF's counsel never responded to this inquiry.

On February 12, 2019, Defendants filed their Notice of Plaintiff's Noncompliance with Order and Renewed Motion for Sanctions. [Doc. 161.] Defendants filed a Supplemental Memorandum in Support on February 26, 2019 based on the deposition issues below. [Doc. 163.] NPF responded on February 26, 2019, and Defendants filed their Reply on February 28,

2019. [Docs. 164 and 167.] Defendants' Renewed Motion for Sanctions is now ripe for decision.

## II. NPF and its related companies failed to appear at properly noticed / subpoenaed depositions.

On January 31, 2019, in anticipation of NPF's and NPF Media's full and complete discovery / subpoena responses pursuant to the Court's Order, Defendants requested from NPF dates for the depositions of NPF; related entities NPF Media and CCFP, LLC;[1] and several other non-parties. Defendants asked NPF's counsel to advise by February 4, 2019 of any dates in the last half of February when they were unavailable and, "If there are particular dates that do or do not work for these individuals / entities, please let us know." NPF never responded.

Defendants had sought these depositions over a dozen times over the last eight months, with NPF having failed to propose a single date for the same. Therefore, on February 6, 2019, Defendants issued and filed a Notice for Defendants' deposition of NPF to occur at 9:00 AM on February 20, 2019. [Doc. 155.] Defendants also issued Subpoenas for the depositions of the representatives of NPF Media and CCFP to occur on February 21 and 22, 2019. [Doc. 156.]

On February 19, 2019, after close of business the evening before NPF's properly-noticed deposition, NPF provided Defendants' counsel with Objections regarding NPF's deposition and the depositions of NPF Media and CCFP. According to NPF, these depositions were improper because Defendants had purportedly not attempted to schedule the same through NPF's counsel and because the witnesses' schedule were "packed" due to softball season having started. Each of these proffered excuses lacks merit.

On February 20, 2019, having not been able to cancel the court reporter services scheduled for the deposition of NPF, Defendants' counsel memorialized NPF's non-appearance

---

[1] CCFP, LLC is the entity which apparently operates one of the teams in the League. It is represented by NPF's counsel.

3

on the record. Defendants' counsel also advised the court reporter that the representatives of NPF Media and CCFP were also not going to appear the next two days. And later that morning, Defendants' counsel emailed NPF's counsel advising that their position is both factually and legally incorrect. NPF again never responded.

These issues are more fully addressed in Defendants' Supplemental Memorandum in Support of Defendants' Renewed Motion for Sanctions. [Doc. 163.]

### III. NPF issued subpoenas to various financial institutions seeking irrelevant documents, and the Affected Parties filed a Motion to Quash regarding the same.

On January 4, 2019, NPF issued subpoenas directed at six financial institutions demanding a laundry list of financial records of Defendants, Defendants' friends, and Defendants' family members dating back to January 1, 1992 (the "Subpoenas"). Defendants questioned the relevance and scope of the Subpoenas, but NPF advised Defendants it intended to move forward with the Subpoenas as issued.

After NPF remained entrenched in its improper efforts, Defendants filed a Motion to Quash the Subpoenas. [Doc. 147.] Defendants' Motion to Quash is fully-briefed and ripe for decision.

### IV. NPF continued trying to stonewall Defendants' efforts to obtain relevant documents, including apparently misrepresenting that NPF's counsel represents a particular non-party.

On January 23, 2019, Defendants issued a subpoena *duces tecum* to Sherri Shedd CPA, who is the accountant for NPF Media. [Doc. 150.] Defendants' filed their Notice of Proof of Service with the Court on February 5, 2019 after receipt of the signed certified mail green card. [Doc. 154.] The subpoena *duces tecum* issued to Ms. Shedd is particularly important because (1) NPF's financial records reveal that it has no damages as a result of Defendants' alleged misconduct; but (2) NPF asserts that NPF Media did suffer that damage; but (3) NPF Media has

failed to comply with its subpoena *duces tecum* obligations and the Court's Order which compelled compliance with the same.

On February 6, 2019, NPF objected to the subpoena *duces tecum* on behalf of Ms. Shedd – and in doing so, NPF's counsel purported to represent Ms. Shedd. On February 11, 2019, however, Ms. Shedd contacted Defendants' counsel directly and asked for an extension of time to respond to the subpoena. Defendants' counsel inquired as to whether Ms. Shedd was represented by any counsel, and she advised she was not. After agreeing to an extension for Ms. Shedd's responses, Defendants' counsel inquired with NPF's counsel about their apparent misrepresentation regarding representing Ms. Shedd. NPF again never responded.

**V.     NPF continued its irrelevant fishing expedition with USA Softball.**

NPF has taken over twenty hours of deposition testimony from representatives of USA Softball, a non-party in this action. Apparently unsatisfied by this level of discovery, and without any effort to coordinate the date, NPF unilaterally set the deposition of Karen Johns – a USA Softball selection committee member – for January 24, 2019. Defendants' counsel prepared for and arranged to attend the deposition through a video conferencing service, which required additional costs. At the set time, Defendants' counsel attempted to join the deposition but was informed by the video conferencing service that the deposition had been canceled. Defendants' counsel immediately emailed NPF's counsel about this issue, but never received a response back.

On January 29, NPF unilaterally set the deposition of Lovie Jung – another USA Softball selection committee member – for February 19, 2019, again without any discussion with Defendants' counsel.

On February 6, 2019, Ms. Johns, Ms. Jung, and USA Softball, Inc. filed a joint motion for a protective order.  [Doc. 157.]  In this joint motion, these non-parties comment on NPF's fishing expedition with respect to USA Softball; the significant legal expenses incurred because of the fishing expedition; and NPF's own delinquency in document production and depositions.  [Doc. 157, PageID# 3219.]  NPF has responded to this Motion [Doc. 162], and the moving parties filed their Reply.  [Doc. 165.]  As the Reply explains in great detail, the continued discovery efforts toward USA Softball and its representatives have absolutely no bearing on the issues in this case.

VI.  **A second franchise from NPF's League has confirmed that Defendants have never caused it any damages and that it has never said otherwise to NPF.**

Over the course of this litigation, in addition to attempting to conduct discovery regarding NPF and its affiliated entities, NPF Media and CCFP, Defendants have conducted discovery regarding the Florida Pride and the Chicago Bandits.  These were the only two other franchise teams in the League when NPF terminated the SY Dawgs, LLC franchise.  This discovery is important because, according to testimony from NPF's commissioner at the injunction hearing, "The importance of the noncompete agreement [between some of the Defendants and NPF, which is at the heart of this case] is really to protect their investment."  [Doc. 42, PageID# 504, lines 14-16.]  According to NPF's commissioner:

> It's our commitment as a league that we have the documents in place to protect [the franchise owners'] commitment that they made and that the players have made, to be quite honest with you, to be able to be within something that is confined and restricted and very clearly defined that someone cannot come into our league, take the valuable information we have, and leave and use it against us.

[*Id.* at lines 17-23.]

NPF has also asserted that the Noncompete Agreement should be enforced because "its restrictions are reasonably necessary to protect the franchisor [NPF] and the remaining franchisees [CCFP and the owners of the Florida Pride and the Chicago Bandits]." [Doc. 44, PageID# 690, ¶6.]

On February 28, 2019, Defendants filed an Affidavit of Don Dedonatis, III, the Chief Executive Officer of the sole shareholder of the entity which owns and operates the Florida Pride. [Doc. 166.] This Affidavit confirms that Mr. Dedonatis and the other representatives are unaware of any "damage, harm, loss of goodwill, or loss of business" resulting from anything done by Defendants or their representatives, before, during or after Defendants' affiliation with NPF, and they are also not aware of any effort by Defendants or their representatives to divert business away from the Florida Pride at any time. [*Id*. at ¶¶ 8-12.] The Affidavit also confirms that the entities which own and operate the Florida Pride have no documents regarding any alleged misconduct by Defendants or any damages resulting therefrom. [*Id*. at ¶¶13-14.] And, the Affidavit confirms that no one on behalf of the Florida Pride told NPF, any related entity, or any representative thereof that the Florida Pride suffered any "damages, harm, loss of business or loss of goodwill" as a result of any actions taken by Defendants or any representative thereof. [*Id*. at ¶16.]

This Affidavit is substantively the same as the filed Affidavit of the Mayor of the Village of Rosemont, Illinois, which owns and operates the Chicago Bandits. [Docs. 91 and 91-1.]

Defendants look forward to discussing these issues with the Court and NPF's counsel at the March 1, 2019 Status Conference.

Respectfully submitted,

*/s/ William M. Harter*
William M. Harter (0072874)
Yazan S. Ashrawi (0089565)
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, OH 43215
(614) 464-1211 / (614) 464-1737 (fax)
wharter@fbtlaw.com
yashrawi@fbtlaw.com
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2019, the foregoing was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties who do not receive this filing via the Court's electronic filing system will receive a copy by regular United States mail.

*/s/ William M. Harter*
William M. Harter (0072874)
FROST BROWN TODD LLC

0138212.0657539  4846-7772-6345v1