**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NPF FRANCHISING LLC,** | ) | **CASE NO.  1:18 CV 277** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| | ) | **Magistrate Judge William H. Baughman, Jr.** |
| | ) | |
| **SY DAWGS, LLC,** | ) | <u>**MEMORANDUM OPINION**</u> |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Motion for Fees and Costs filed by Defendants,

Joel Bartsch; Sy Dawgs, LLC; KTC Interests, LLC; Scrap Yard Fast Pitch, LLC; and, Connie A.

May on July 12, 2019  (collectively "Sy Dawgs").  (Docket #212.)  Sy Dawgs seeks an award of

attorneys' fees and costs in this action against Plaintiff, NPF Franchising LLC ("NPF") and its

attorneys from the Buchalter law firm ("Buchalter"), pursuant to the Court's inherent power to

sanction bad faith, vexatious, wanton or oppressive conduct; pursuant to the fee-shifting clause

set forth in the Parties' Non-Disclosure and Non-Competition Agreement; and, under Rule 37 as

sanctions for discovery abuses.

Upon completion of briefing, Sy Dawgs' Motion for Fees and Costs was referred to

Magistrate Judge William H. Baughman, Jr. for a Report and Recommendation.  A hearing on

Sy Dawgs' Motion was held before Magistrate Judge Baughman on July 13, 2020.

On September 24, 2020, Magistrate Judge Baughman issued his Report and Recommendation. (Docket #239.) The Magistrate Judge recommends the Motion for Fees and Costs filed by Sy Dawgs be granted and, that pursuant to Fed. R. Civ. P. 37, NPF and its lawyers of record be held jointly and severally liable for attorneys' fees, expenses and costs in the amount of $224,863.80, with post-judgment interest as calculated under 28 U.S.C. § 1961, as sanctions for discovery violations in this case.

## I. Factual and Procedural Background.

NPF operates the National Pro Fastpitch League ("the League"), a women's professional softball league in which the Sy Dawgs participated. (Complaint at Paragraph 2.) The relationship between NPF and Sy Dawgs was governed by a Franchise Agreement and a Non-Disclosure and Non-Competition Agreement ("the Agreements"). (Id. at Paragraph 1.)

On February 2, 2018, NPF filed its "Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunctions, Money Damages and Other Relief," against SY Dawgs. (Id. at Paragraph 2.) In its Complaint, NPF alleged Sy Dawgs breached the terms of the Agreements by competing with NPF; announcing its withdrawal from the League; forming a new team and entering into direct competition with the League; directly soliciting NPF's suppliers, sponsors and media partners; and, failing to pay NPF under the Agreements. As summarized by the Magistrate Judge, "after two and a half years of litigation," NPF "never got the temporary restraining order it had sought in its three complaints; lost a preliminary injunction motion and a petition for writ of mandamus; was compelled twice to produce discovery; and was sanctioned for non-compliance with a court order." (Report and Recommendation at p. 219.)

In late March 2019, Sy Dawgs sought dismissal of this case pursuant to Fed. R. Civ. P. 37, as a sanction for NPF's "repeated and ongoing" discovery violations. (Docket #s 178 and

182.)  On July 5, 2019, in the face of an imminent ruling on Sy Dawgs' pending Motions to

Dismiss, NPF moved to voluntarily dismiss its case with prejudice.  (Docket #211.)  On July 18,

2019, this Court issued an Order granting NPF's Motion, dismissing the case with prejudice and

stating as follows:

> Plaintiff has moved to voluntarily dismiss this action with prejudice.
> (ECF #211).  Plaintiff's Motion to Voluntarily Dismiss this Action is GRANTED.
> Accordingly, this action is DISMISSED WITH PREJUDICE.
>
> Defendants' have filed a Motion for Costs and Fees.  (ECF #212) Plaintiff
> shall file a response to that motion by August 1, 2019.  Defendants may file a
> reply by August 6, 2019.

(Docket #213.)

### A.    Discovery.

Prior to NPF's Motion to Voluntarily Dismiss this Action with Prejudice, this case was

repeatedly and unduly complicated and prolonged by the failures of NPF and its attorneys to

meaningfully or honestly participate in the discovery process.  Buchalter and its attorneys Tracey

A. Warren and Kathryn Boyd Fox, entered an appearance in this case and were admitted, *pro hac*

*vice*, as Counsel for NPF in late August 2018.  (Docket #s 86, 87 and 89.)  Buchalter attorneys

Rick A. Waltman and J. Patrick Allen were added, *pro hac vice*, in December 2018.  (Docket #s

141 and 142.)  The Buchalter attorneys were Counsel of Record during a string of discovery

disputes which, in part, underlie Sy Dawgs' Motion for Fees and Costs.[1]

In his Report and Recommendation, the Magistrate Judge detailed NPF's failure to

comply with its discovery obligations; Sy Dawgs' efforts to compel NPF's compliance with

---

[1]    Attorneys from the Meyers, Roman, Friedberg & Lewis Law Firm and the
Sherman Boseman Legal Group were retained as local counsel.  Their involvement in the
case is not relevant to the instant motion and Sy Dawgs does not seek fees and costs from
either.

discovery; and, Sy Dawgs' requests for sanctions.  The Magistrate Judge set forth the following:

The SY Dawgs' first motion for attorney's fees, costs and expenses came in June 2018 – only four months into the litigation.  The District Judge adopted my report and recommendation, and denied the motion without prejudice as premature.  The SY Dawgs' second sanctions motion regarding non-attendance at a status conference was prompted when no one appeared on NPF's behalf at the Court's status conference on August 9, 2018 despite proper notification.  That particular docket entry reflected the growing problems with discovery from NPF.  Besides documenting that no one had showed up on NPF's behalf, the entry noted that "Defendant has attempted to obtain discovery by issuing subpoenas, etc.  No one has properly responded.'"

About three weeks later, the District Judge permitted NPF to replace its lawyers.  This could have been a chance for a fresh start, but it proved not to be so.  Less than a month later, the SY Dawgs filed their third motion for sanctions and this time with a motion to compel discovery.  The District Judge denied the motion for discovery sanctions, noting: "but may be re-visited as case proceeds."  The District Judge, however, granted the motion to compel "inasmuch as [plaintiff's] counsel has represented to Court & counsel that all requested information has been disclosed.  No sanctions at this time."

The volume increased.  Two weeks later, the SY Dawgs filed a fourth motion for sanctions and two months after that a second motion to compel discovery.  As I noted above, NPF filed its own motion for discovery sanctions and to compel discovery later that day.  But any similarities between the parties' respective filings ended with the captions.

Less than a month later, the District Judge denied NPF's motion to compel discovery and its motion for discovery sanctions, finding "no reason to doubt Defendants' assurances to the Court that all responsive discovery has been provided"; granted the SY Dawgs' motion to compel discovery; and denied the SY Dawgs' motion for discovery sanctions, but again giving a warning.  "The issue of sanctions may be revisited, if warranted, when the litigation of Plaintiff's claims has concluded."  The District Judge also found that the discovery the SY Dawgs sought "is relevant to the claims raised against Defendants and production will not [sic] unduly burdensome or expensive."

When NPF failed to respond to the SY Dawgs' discovery requests within 14 days or to certify that it had fully responded to all of those requests and that there was nothing responsive left to produce, as the District Judge had ordered it to do, the SY Dawgs filed their fifth motion for sanctions.  The District Judge's patience was wearing thin.  The motion was granted, and NPF was ordered to file an affidavit or declaration of its corporate representative certifying that NPF "has fully complied with the Defendants' discovery requests at issue by Friday, March

-4-

22, 2019. In addition, the Court also orders Plaintiff's counsel to file a similar certification of compliance by counsel on or before March 22, 2019. Failure to comply with this Order will result in sanctions, up to and including dismissal of Plaintiff's action." The parties were also directed to file an agreed upon protective order by March 22, 2019. Another warning to NPF came with this order. "Again, any monetary sanctions for Plaintiff's repeated discovery instransigence will be addressed at the conclusion of this action."

(Report and Recommendation at pp. 26-28.) The Magistrate Judge noted that "NPF and its lawyers chose at their peril to adopt a tit-for-tat strategy, ignoring the District Judge's clear warnings . . . ," failed to follow the Court's briefing schedule and made its own rules regarding motion and discovery practice. (Report and Recommendation at pp. 24-25.)

On March 22, 2019, NPF attorney Tracy A. Warren filed an Affidavit, stating, "Plaintiff is unable to certify that it has produced all information in its possession responsive to the requests at issue due to pending discovery from Defendants and third parties that could affect the pertinence of certain documents and requests." (Docket #175.) NPF then filed a Petition for Writ of Mandamus with the Sixth Circuit on March 27, 2019 (Sixth Circuit Case No. 19-3242), asking the Appellate Court to vacate this Court's January 25, 2019 Discovery Order.

On May 21, 2019, the Sixth Circuit denied NPF's Motion for Writ of Mandamus, stating as follows:

Plaintiff NPF Franchising, LLC (NPF) petitions for an expedited writ of mandamus and to stay further proceedings in the district court pending a ruling on its petition. It asks that the district court be instructed to vacate its January 25, 2019 order denying NPF's motion to compel discovery and granting defendants' motion to compel. Defendants oppose a stay.

\* \* \*

**When the district court entered its January 25, 2019 order, "the parties [did] not assert that any of the information requested [was] somehow privileged." NPF does not dispute that finding. And when it subsequently claimed that a particular document contained confidential information, the district court addressed NPF's concern by directing the parties to file an agreed protective order.** A district court's discovery-related rulings are reviewed

"under the highly deferential abuse-of-discretion standard." Loyd v. Saint Joseph Mercy Oakland, 766 F.3d 580, 588 (6th Cir. 2014). Given this standard, NPF has failed to demonstrate a clear and indisputable right to the relief it seeks, and we conclude that the extraordinary remedy of mandamus is not warranted.

The petition for a writ of mandamus is DENIED, and the request for a stay is DENIED as moot.

*In re NPF Franchising*, Sixth Circuit Case No. 19-3242, Docket #10 (emphasis added).

On May 23, 2019, this Court held a hearing on NPF's Motion for Default Judgment and on Sy Dawgs' two Motions to Dismiss. Testimony from the May 23, 2019 hearing, quoted by the Magistrate Judge, further explains NPF's pattern of conduct relative to discovery:

MR. HARTER (Counsel for Sy Dawgs): There was a belief at that time [May 29, 2018 when this Court adopted the Magistrate Judge's Report and Recommendation that NPF's Motion for a Preliminary Injunction be denied] that the case would be dismissed, certainly among the Defendant and I think perhaps by the Court. When it became clear that that was not the case, the Defendant sent out written discovery. They sent out subpoenas to the Plaintiff's parent company for documents, and they requested depositions of the corporate reps of those two entities.

In eleven months since then, the Plaintiff has failed to answer virtually every interrogatory. They have failed to provide responses to virtually every request, and their parent -- their parent has failed to provide documents in response to the subpoena, and both they and their counsel have twice failed to appear for subpoenaed and noticed depositions.

(Docket #197 at p. 4.)

Defense counsel provided another example of NPF's transgressions later in the hearing:

MR. HARTER: We asked for their by-laws and their minute meetings [sic] from when our team left the league. Those documents are relevant and responsive. What does the league say internally about our departure? No production. We have asked for their bank statements. Have their financial accounts changed since we left the league? We know they have bank accounts. We've seen them from before the preliminary injunction. We asked for them since. No production, not one. We asked for the parents' financial records. No production.

(Id. at p. 34.)

Similar problems were recounted with regard to the scheduling of depositions:

> MR. HARTER: We have documented over a dozen instances where we attempted to cooperate with the Plaintiff's counsel to secure dates. I've never had a party simply not show up for a deposition. I have certainly never had it twice but in this case, despite requests ahead of time, to set those up, despite the serving of notices and subpoenas in plenty of time, despite saying these dates don't work we will pick a different date, despite saying the location doesn't work we will pick a different location.

(Id. at pp. 8, 34-41.)

That hearing also revealed a concern that NPF, in its filings with the Court of Appeals, may have misrepresented to this Court the degree to which it had complied with its discovery obligations. While it had previously represented to this Court that it had complied with all of Sy Dawgs' discovery requests, NPF later represented to the Court of Appeals that there were "potentially thousands" of responsive documents it had not yet produced. (Report and Recommendation at pp. 29-31.)

**B.    Magistrate Judge Baughman's Report and Recommendation.**

Based upon his review of the entire record in this case, the Magistrate Judge recommends the Motion for Fees and Costs filed by Sy Dawgs be granted and, that pursuant to Fed. R. Civ. P. 37, NPF and its lawyers of record be held jointly and severally liable for attorneys' fees and costs in the amount of $224,863.80, with post-judgment interest as calculated under 28 U.S.C. § 1961, as sanctions for discovery violations in this case. The Magistrate Judge found as follows:

> NPF and its attorneys failed to cooperate in discovery at least due to their willfulness and fault, and possibly their bad faith. The SY Dawgs were seriously prejudiced by NPF's failure to cooperate in discovery. The docket highlights set forth earlier in this report and recommendation paint only part of the picture of the problems the SY Dawgs faced due to NPF's repeated discovery intransigence. The warnings from the Court about possible sanctions couldn't be any clearer. The District Court posed the question of whether lesser sanctions could be imposed short of dismissal, even gave NPF's lawyers time to brief the issue. No briefing was forthcoming except for a repeat of NPF's insistent denial of having done nothing wrong. No accommodation was ever

-7-

reached.

After reviewing the record in this case and hearing argument from the parties' counsel on the SY Dawgs' pending motion, I find that the numerous discovery violations committed by NPF and its lawyers as set forth by the SY Dawgs during the May 23, 2019 hearing before the District Judge, reiterated during oral argument before me on July 13, 2019, and highlighted in the SY Dawgs' written submissions in conjunction with their pending motion did in fact occur. **I further find that those violations, all of which implicated both NPF and its lawyers**, continued unabated notwithstanding the District Court's orders requiring NPF's compliance with the SY Dawgs' discovery requests, requests made by the District Court, and the federal discovery rules governing civil cases. For these foregoing reasons, I recommend that the District Judge grant the SY Dawgs' pending motion.

* * *

The summary chart of selected docket entries I set forth earlier reflects shameful litigation.  In no case should any litigant have to file so many motions for sanctions or so many motions to compel basic discovery that the Court found to be relevant and fundamental to the case.  Had NPF complied with the rules and provided that discovery when it was supposed to, the opportunities to bring this case to a quick resolution would have increased significantly.

(Report and Recommendation at pp. 34-35, 41.  Emphasis added.)

The Magistrate Judge declined to recommend an award of fees based on the fee-shifting provision of the Parties' Agreements, and declined to recommend an award of fees based on the Court's inherent power to sanction bad faith conduct.

## C.    The Parties' Objections to the Report and Recommendation and Additional Briefing.

Both Parties filed Objections to the Report and Recommendation.  The bases for those objections, along with a summary of the Parties' additional motions, briefing and relevant Court rulings, are as follows:

- Sy Dawgs' Objections to the September 24, 2020 Report and Recommendation (Docket #240). Filed October 8, 2020.

    Sy Dawgs objects to the Magistrate Judge's Report and Recommendation to the extent that the Magistrate Judge did not ultimately find and recommend that an

-8-

award of full legal fees and costs under the Court's inherent authority to sanction "bad faith" litigation was appropriate. Alteratively, Sy Dawgs argues that if the Court agrees with the Magistrate Judge that attorneys' fees and costs should only be awarded as sanctions under Rule 37 for discovery violations, that the Court award 100% of the fees and costs incurred during the discovery period, with no reduction.

- NPF's Objections to the Report and Recommendation Re Motion for Fees and Costs (Docket #241). Filed October 8, 2020.

    NPF objects to the Magistrate Judge's Report and Recommendation, arguing it does not owe Sy Dawgs' attorneys' fees under any theory (whether pursuant to the Court's inherent authority to sanction bad faith conduct, pursuant to the fee shifting provisions of the Parties' Agreements, or as discovery sanctions). Alternatively, NPF argues that should any fees be awarded to Sy Dawgs, such fees should be limited to sanctions under Rule 37 for discovery misconduct. NPF argues that contrary to the Magistrate Judge's representation, it did challenge Sy Dawgs' expenses and fee submissions, but that it was not afforded an opportunity to argue regarding the specific time entries because the Court had not yet made a determination on whether any fees were owed and that Magistrate Baughman did not invite argument on specific time entries. NPF sets forth several challenges to certain items included in the Magistrate Judge's calculation of fees, including a brief reference to the Magistrate Judge's findings regarding joint and several liability among NPF and its attorneys.

- Buchalter's Request for Extension of Time to Intervene, File Objections on Behalf of Buchalter Law Firm and Request to Withdraw as Counsel of Record. (Docket #242). Filed October 14, 2020.

    Citing Ohio Rule of Professional Conduct 1.16(b)(5)(6)(9), Buchalter stated that its representation of NPF had "resulted in an unreasonable financial burden on Buchalter;" that NPF had "failed to substantially fulfill an obligation financial or otherwise;" and, that NPF had been given "reasonable warning of Buchalter's withdraw [sic] unless the obligation is fulfilled." Buchalter requested an extension of time to intervene and file objections to the Report and Recommendation on its own behalf.

- Motion by Buchalter to Withdraw as Counsel for Plaintiff. (Docket #244.) Filed October 19, 2020.

    Buchalter asserted that it had done no substantive work on this case since it filed its Motion to Voluntarily Dismiss with Prejudice on July 18, 2019 and asserted a conflict of interest between Buchalter and NPF, stating that NPF "failed to pay, communicate, and/or otherwise cooperate with Buchalter over a prolonged period throughout the litigation" and that "continued representation under the current circumstances, has and continues to severely prejudice Buchalter and its

-9-

effectiveness as an advocate."  Buchalter asserted that representation of NPF resulted in an unreasonable financial burden and that the representation had been rendered unreasonably difficult by NPF.

•     Sy Dawgs' Response to Buchalter's Motion to Withdraw as Counsel.  (Docket #245.)  Filed October 21, 2020.

Sy Dawgs argued that there was no valid basis upon which to allow Buchalter to withdraw; that the record did not support the claimed reasons for withdrawal; that the Motion was strategically-timed and intended to be coercive in nature; and, that granting the Motion would severely prejudice Sy Dawgs.

•     Memorandum Opinion and Order.  (Docket #246.)  Issued October 23, 2020.

The Court denied Buchalter's Extension of Time to Intervene, File Objections on Behalf of Buchalter Law Firm and Request to Withdraw as Counsel of Record (Docket #242) and Motion to Withdraw as Counsel (Docket #244).  The Court stated as follows:

> The Court was unaware of any purported deterioration in the relationship between NPF and Buchalter prior to Buchalter's October 14, 2020 filing. The Docket reflects ongoing communication and active representation up until the filing of the instant Request/Motion; Counsel for SY Dawgs indicates that it discussed settlement with opposing Counsel as late as October 12, 2020; and, there is no indication that the Court was ever informed of a breakdown in communications or other circumstances warranting withdrawal at any time prior.
>
> Buchalter's asserted "conflict of interest" likely stems from the fact that the Magistrate Judge recommends joint and several liability for attorney fees and costs, as Buchalter now seeks to withdraw, intervene, and file objections on its own behalf.  However, Buchalter has known since the time NPF initially filed its Motion for Attorney Fees and Costs on July 12, 2019 – well over a year ago – that SY Dawgs sought attorneys' fees and costs not only from NPF, but also from Buchalter as a discovery sanction. Buchalter and its attorneys continued to represent NPF throughout proceedings related to SY Dawgs' Motion for Fees and Costs – including throughout briefing, during oral arguments, and in filing objections to the Magistrate Judge's Report and Recommendation on October 8, 2020.  For over a year, Buchalter had ample opportunity to address the question of whether Buchalter should be sanctioned for its conduct during this case but failed to do so and never sought to withdraw from the case on the basis of conflict or a breakdown in communications until faced with the possibility of being held liable for fees and costs.  All of the issues between the Parties to this case have been litigated and all that remains is a final decision from the Court on the Magistrate Judge's Report and

Recommendation.  There is no legitimate basis under the facts and circumstances of this case to permit Buchalter to withdraw as Counsel at this late and final stage in proceedings.

The Court allowed Buchalter additional time to field Supplemental Objections to the Report and Recommendation.

- Buchalter Law Firm's Supplemental Objections to Report and Recommendation Re Motion for Fees and Costs.  (Docket #247.)  Filed October 30, 2020.

     Buchalter filed objections separate and apart from those it filed on behalf of its client, NPF.  Buchalter argues that while Sy Dawgs "repeatedly complain about Plaintiff's case, alleged actions, and assumed motivations," Sy Dawgs' Motion is devoid of "any facts, analysis, argument, or authority establishing any award of sanctions against Buchalter."  Buchalter states that the only reference in Sy Dawgs' Motion to holding Buchalter liable is found in a single heading and asserts that the Magistrate Judge's determination that Buchalter should be held jointly and severally liable for sanctions was made "sua sponte" and "without due process of law."  Buchalter argues that it was never given notice and an opportunity to be heard on the issue of joint and several liability and requested "an opportunity to be heard" before the Court imposed sanctions against Buchalter.  (Docket #247 at p. 2.)

- Sy Dawgs' Response to Buchalter's Supplemental Objections to Report and Recommendation Re Motion for Fees and Costs.  (Docket #248.)  Filed November 9, 2020.

     Sy Dawgs argues that Buchalter was Counsel of Record during all times relevant to the Magistrate Judge's decision that attorneys' fees and costs should be awarded as discovery sanctions in this case.  Sy Dawgs argues that sanctions against Buchalter are available under several theories, all of which were referenced prior to the Report and Recommendation and included therein and that Buchalter had notice of Sy Dawgs' intent to pursue sanctions against Buchlater and multiple opportunities to respond.  Sy Dawgs cites testimony from the hearing before Magistrate Judge Baughman in which Magistrate Judge Baughman specifically asked whether Sy Dawgs was seeking sanctions against both NPF and its Counsel, to which Counsel for Sy Dawgs responded, "Yes" and "The Plaintiff, its parent entity, NPF Media, and their counsel, the Buchalter firm."  Magistrate Judge Baughman immediately asked Counsel for Buchalter for its argument regarding the same, yet none was offered.  Sy Dawgs notes that no sanctions award has been entered yet in this case; that the Court has stated on multiple occasions that sanctions would be revisited at the end of this case, including one instance in which the Court ordered NPF and Buchalter each to certify compliance with the Court's prior discovery order, which it never did; and, that Buchalter's Supplemental Objections "are the very opportunity to be heard that Buchalter asserts it has never received."  (Docket #248 at p. 9.)  Sy Dawgs argues

-11-

that joint and several liability for sanctions should be entered against the entire firm and the individual attorneys without apportionment.

•   Buchalter's Reply in Support of Supplemental Objections to Report and Recommendation.  (Docket #249.)  Filed November 13, 2020.

Buchalter states that the "sole issue presented by the Supplement is the absence of due process."  Buchalter argues that "merely being counsel of record during discovery disputes is insufficient to satisfy due process and provides no basis for a purported factual finding of 'the role Buchalter played' to support an award of sanctions."  Buchalter argues that the Court cannot satisfy due process "without any inquiry into the person's share of responsibilty." In sum, Buchalter argues that Sy Dawgs failed to establish that sanctions are warranted; that Buchalter and its attorneys had no notice that they may be subject to joint and several liability in the event the Court ordered sanctions; and, that Buchalter had no opportunity to be heard.

•   Sy Dawgs' Response to Buchalter's Reply in Support of Supplemental Objections to Report and Recommendation.  (Docket #250.)  Filed November 18, 2020.

Sy Dawgs reiterates its previous argument that Buchalter had notice and an opportunity to be heard on the issue of sanctions against both NPF and Buchalter.

Briefing of the Parties' Objections to the Report and Recommendation was complete on November 18, 2020.  The Court promptly and comprehensively reviewed the same and, on November 20, 2020, issued an Order stating as follows:

**A hearing regarding the issue of the Buchalter Law Firm's liability for fees and costs is hereby scheduled for Friday, January 8, 2021 at 9:00 a.m.**

(Docket #251.)

Due to scheduling conflicts, the hearing was ultimately reset for February 18, 2021.  At 3:00 p.m. on February 17, 2021, the day before the scheduled hearing, NPF filed a one sentence "Motion to Continue Hearing," requesting a two-week continuance "due to sudden computer server issues disrupting access to documents for this matter."  (Docket #253.)  Sy Dawgs filed an Objection to NPF's Motion to Continue that same day at 6:00 p.m., noting that the hearing date had been reset three weeks earlier; that the substance of the hearing had been known to Buchalter

-12-

for months; and, that it had offered to provide any documents in its possession needed by Buchalter, but Buchalter replied within minutes declining the invitation.  (Docket #254.)  Three months had elapsed between this Court's original Order scheduling the hearing on Buchalter's liability for fees and costs and the February 18, 2001 hearing date – giving the Parties ample time to prepare and/or file any additional motions or briefing they felt necessary, yet nothing was filed.

**D.    February 18, 2021 Hearing Regarding Buchalter's Liability for Fees and Costs.**

The Court issued no ruling on NPF's late Motion to Continue and the hearing proceeded as scheduled on February 18, 2021.  (Docket #258.)  Appearing on behalf of NPF/Buchalter were Tracy Warren and Kathryn Fox.  Appearing on behalf of Sy Dawgs were William Harter and Yazan Ashrawi.

Ms. Warren argued that Buchalter, its attorneys and NPF have been denied due process with regard to the Magistrate Judge's determinations that Sy Dawgs was entitled to attorneys' fees and costs as discovery sanctions in this case and that Buchalter, its attorneys and NPF should be held jointly and severally liable.  Citing *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 797 Fed. Appx. 1002 (6th Cir. 2020), Ms. Warren argued that prior warnings, references, and suggestions that the individual attorneys in this case have engaged in misconduct and may be subject to sanctions are insufficient to satisfy the due process requirements of fair notice or an opportunity to be heard.  (Docket #258 at p. 3.)

Ms. Warren asserted that none of the attorneys in this case were ever told what they have done wrong, nor were they informed by the Court that they should be prepared to discuss their conduct in the future; were not given an "opportunity to argue why [their] conduct was not sanctionable and bad faith;" and, that they were "given leave to object without more." (Id. at pp. 4-6.)  Ms. Warren argued that notice regarding sanctionable conduct must "happen during the

-13-

pendency of the litigation," that the Rule 37 Motions filed in this case did not put the attorneys on notice of the possibility of joint and several liability and, therefore, that the Magistrate Judge's Report and Recommendation that NPF's attorneys be held jointly and severally liable for attorneys' fees as costs and sanctions in this case was issued without due process.  (Id. at p. 10.)  Ms. Warren stated that Rule 37 sanctions require a show cause order and an evidentiary hearing, and argued that the Court's hearing notice "did not tell any individual attorneys to appear, nor did it tell any individual attorneys what they did wrong, nor did it afford an order to show cause to defend the conduct." (Id. at p. 11.)

On behalf of Sy Dawgs, Mr. Harter argued that Sy Dawgs is entitled to recoup fees and costs in this case, against NPF, the Buchalter Law Firm and the individual attorneys, jointly and severally.  Mr. Harter noted that all of the discovery disputes in this case arose during Buchalter's representation of NPF; that the discovery abuses in this case were pervasive; that the Court issued multiple discovery orders against NPF and Buchalter; and, that through the Buchalter firm, NPF misrepresented its compliance with court-ordered discovery in this case. (Id. at p. 16.)  Mr. Harter argued the Court should impose sanctions under Rule 37 and that the question of whether SY Dawgs sought sanctions against NPF, Buchalter and its attorneys, jointly and severally, was directly posed by the Magistrate Judge, thereby putting Buchalter and its attorneys on notice.  (Id. at pp. 16-18.)  Further, Mr. Harter argued that although the Magistrate Judge chose to award attorneys' fees and costs only as a discovery sanction, bad faith has permeated this case.  (Id. at p. 19.)  Mr. Harter states that Sy Dawgs' fees and costs are reasonable; that its invoices were submitted to the Magistrate Judge prior to the hearing on Sy Dawgs' Motion for Fees; and, that despite offering to discuss the itemized fees during said hearing, neither the Court nor Buchalter raised any questions.  (Id. at p. 20.)

-14-

After Counsel for both Parties had addressed the Court, the Court asked Ms. Warren if the Buchalter Law Firm had any evidence or witnesses it would like to present, to which Ms. Warren responded, "[w]e're not prepared for that at this time."  (Transcript at p. 21.)  Ms. Warren stated, "The whole point of this is we were not afforded due process.  If the Court wants to set an evidentiary hearing on Buchalter's actions alone, we certainly are open to that, but that's not before the Court right now."  (Id. at pp. 21-22.)  The following discussion then occurred:

> The Court:    Why would you say that's not before the Court?  That's exactly what we're here for.
>
> Ms. Warren:   There's no notice of that Your Honor.  There's no notice for us to call witnesses.  There's no notice for us to go ahead and provide that such [sic] evidence. . . .
>
> The Court:    Hold it.  Hold it.  Hold it.  How do you say there's no notice?  You asked for a hearing.  I - - this is a very unusual procedure because you had an opportunity before Judge Baughman, Magistrate Judge Baughman, you had an opportunity to respond to the defendants' motion for sanctions, and you knew in his motion, or its motion, and you knew when you were before Judge Baughman, that they were asking for sanctions against not only NPF but also against Buchalter law firm and you individually.  Am I right?
>
> Ms. Warren:   No, I did not know that, Your Honor.

(Id. at p. 22.)

The Court then directed Ms. Warren to the transcript of the Parties' July 13, 2020 hearing before Magistrate Judge Baughman, noting that during the hearing, Mr. Harter explicitly asked for sanctions against NPF and its attorneys.  (Id. at p. 23.)  Ms. Warren argued that Mr. Harter asked for sanctions against Buchalter and the individual lawyers as an "afterthought" in the context of the Court's inherent power to sanction bad faith conduct, not under Rule 37, and "never provided evidence of what Buchalter did."  (Id. at p. 23.)  Ms. Warren argued that to

-15-

satisfy due process, "articulable, particularized conduct" on the part of the attorneys needs to be

identified.  (Id. at p. 24.)  The following discussion ensued:

| | |
|---|---|
| The Court: | Whose bad faith or misconduct would have been at issue other than Buchalter's and yours? |
| Ms. Warren: | Your Honor, it's – they have – this is their burden to prove.  This is not our burden to disprove.  They have to provide the particularized conduct.  They have to articulate that so we have the proper due process. |
| The Court: | But didn't you just tell me before that you never had notice of this? |
| Ms. Warren: | We had no particularized evidentiary facts that Buchalter, Meyers, Roman, Boseman did anything wrong in – |
| The Court: | How about during the pendency of the case, the fact that I granted a number of motions to compel, and then I reserved ruling on sanctions against you until the conclusion of the case, wasn't that notice? |
| Ms. Warren: | Not as to Buchalter, Your Honor.  There is – there are those rulings, but not as to Buchalter to say what we did particularly in those issues. |

(Id. at p. 24.)

Ms. Warren argued that despite the fact that the Court scheduled the hearing on the issue

of Buchalter's joint and several liability, the hearing did not constitute an evidentiary hearing for

purposes of Rule 37 sanctions and was not identified by the Court as "an evidentiary hearing" in

its Order.  (Id. at p. 26.)  Ms. Warren stated that Mr. Harter never briefed the issue of individual

attorney liability so "nobody knows who did what" and that "there is no evidence on the record

that Buchalter did anything sanctionable during the pendency of this litigation."  (Id. at p. 35.)

The Court also addressed Buchalter's Motion to Continue, filed less than 24 hours prior

the hearing:

| | |
|---|---|
| The Court: | Do you have any evidence you wish to offer today? |
| Ms. Warren: | We wish to be afforded an either [sic] order to show cause or an evidentiary hearing. |

-16-

The Court: So, then, why did you file the motion for a continuance at 4:00 yesterday afternoon because you said that you had sudden computer server issues disrupting access to documents you wanted to use for today?

Ms. Warren: That's correct.

The Court: Well, what are those documents?

Ms. Warren: I'm sorry?

The Court: Where are those documents?

Ms. Warren: Your honor, those are attorney-client communicate – work product communications in terms of outlining some of these cases.

(Id. at p. 36.)

The final matter discussed was NPF's liability for attorneys' fees and costs under Paragraph 14 of the Non-Disclosure Agreement between NPF and Sy Dawgs. Paragraph 14 reads:

> In any action at law or in equity to enforce any of the provisions or rights under this agreement, the unsuccessful party in such litigation, as determined by the Court in a final judgment or decree, shall pay the successful party or parties all costs, expenses, and reasonable attorneys' fees incurred therein by such party or parties, including without limitation such costs, expenses and fees on any appeals, and if such successful party shall recover judgment in any such action or proceeding, such costs, expenses, and attorneys' fees shall be included as part of such judgment.

(Id. at p. 37-38.)

Ms. Warren argued that NPF's dismissal of this case with prejudice does not make Sy Dawgs successful in this case; that the Buchalter Law Firm and its attorneys were not a party to the Agreement; and, that Buchalter tried to withdraw from the case following the Magistrate Judge's Report and Recommendation in order to brief issues regarding the Buchalter Law Firm's liability for attorneys' fees and costs. When asked by the Court "if NPF is on the hook or responsible based on that paragraph contractually," Ms. Warren stated, "NPF is the party

-17-

responsible contractually." (Id. at pp. 38-39.)

At the close of the hearing, the Court granted the Parties an additional two weeks to file proposed findings of fact and conclusions of law. The Parties filed their additional briefing on March 5, 2021. (Docket #s 259, 260 and 261.)

**II.     Standard of Review for a Magistrate Judge's Report and Recommendation.**

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R. CIV. P. 72(b) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

**III.    Discussion.**

    **A.     Attorneys' Fees and Costs Pursuant to the Terms of the Parties' Agreements.**

As set forth above, Paragraph 14 of the Parties' Non-Disclosure and Non-Competition Agreement reads as follows:

> In any action at law or in equity to enforce any of the provisions or rights under this agreement, **the unsuccessful party in such litigation, as determined by the Court in a final judgment or decree, shall pay the successful party or parties all costs, expenses, and reasonable attorneys' fees incurred therein by such party** or parties, including without limitation such costs, expenses and fees on any appeals, and if such successful party shall recover judgment in any such action or proceeding, such costs, expenses, and attorneys' fees shall be included as part of such judgment.

(Emphasis added.)

On July 5, 2019, NPF filed its Motion for Voluntary Dismissal with Prejudice pursuant to Fed. R. Civ. P. 41(a)(2). Fed. R. Civ. P. 41(a)(2), reads, in pertinent part, as follows:

-18-

Rule 41. Dismissal of Actions

(a)     Voluntary Dismissal.

(1) By the Plaintiff.

(A)  Without a Court Order.  Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(I) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

(2)  By Court Order; Effect.  Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on the terms that the court considers proper . . .  Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2) is virtually identical to Ohio Civ. R. 41(A)(2).  Under both Ohio and Federal law, a dismissal with prejudice by court order is an adjudication of the case on its merits, changing the legal relationship between the parties.  *See Bridgeport Music, Inc. v. London Music, U.K.*, 226 Fed. Appx. 491 (6th Cir. Tenn. 2007); *Highway Equip. v. FECO, Ltd.*, 469 F.3d 1027 (Fed. Cir. 2006)[2]; *Claiborne v. Wisdom,* 414 F.3d 715 (7th Cir. Ind. 2005)("This

---

[2]As stated in *Highway Equipment*:

[T]he voluntary filing of the covenant in this case was designed to be judicially enforceable and was the basis for the court's order dismissing the claims with prejudice. . . .  The district court's determination to dismiss the remaining controversy with prejudice evidently was prompted by the fact that Highway Equipment had prosecuted the case against FECO through the final pretrial conference to the eve of trial without any explanation of why the covenant was only then filed with the court.  In exercising its discretion and dismissing the case with prejudice, following and in light of the covenant, the district court extinguished Highway Equipment's ability to sue again on those claims.  To hold that in this circumstance, there has been no disposition on the merits would undermine the purpose of Rule 41 to encourage a plaintiff's voluntary dismissal

-19-

order effects a material alteration of her legal relationship with the other parties because it terminates any claims she may have had against them arising out of this set of operative facts.”); *Manohar v. Massillon Community Hosp.,* 122 Ohio App. 3d 715, 719; 702 N.E.2d 937 (5th Dist. Ct. App. 1997)(citing *Griggy v. Eichler*, Case No. 1533, 1986 Ohio App. Lexis 8268 (11th Dist. Ct. App. Sept. 12, 1986)).  A voluntary dismissal with prejudice renders the opposing party a prevailing party.  *Highway Equip., 469 F.3d 1027, 1035-36; Claiborne*, 414 F.3d 715, 719.

NPF filed its motion to voluntarily dismiss its case with prejudice 18 months after the Complaint was filed, after repeatedly obstructing the discovery process in this case and failing to meaningfully participate and move this case forward, and on the eve of a ruling on Sy Dawgs’ Motions to Dismiss.  On July 12, 2019, the Court issued an Order granting NPF’s Motion, and dismissed the case with prejudice.  The purpose of Rule 41 is to encourage a plaintiff’s voluntary dismissal in order to avoid prejudice to the Parties.  Rule 41 was not intended as an escape clause, allowing parties to avoid the repercussions of discovery abuses; to avoid the potential of an unfavorable decision after protracted, fruitless litigation; or, to evade contractual agreements which would otherwise render them financially responsible for the expenses associated with litigation.  The Court’s dismissal with prejudice is an adjudication of NPF’s case against Sy Dawgs on the merits.

The Parties’ fee-shifting agreement requires the “unsuccessful party” to pay the

---

under such terms as to avoid prejudice.  Such a holding would imply that the only way for a defendant to obtain a disposition on the merits would be to oppose a dismissal and proceed to litigation on the merits, and would encourage the litigation of unreasonable or groundless claims.

*Highway Equip., 469 F.3d 1027, 1034-35.*

"successful party" all expenses, costs and reasonable attorneys' fees.  The Parties agreed during oral argument that "prevailing" is equivalent to "successful."  Accordingly, as the prevailing party in this litigation, Sy Dawgs was the successful party.  Further, as anticlimactic as it may be to reach the point of a dispositive motion ruling only to have NPF abandon its case, it must be recognized Sy Dawgs successfully defended itself in this case from the outset.  NPF never got the temporary restraining order it had sought in its three Complaints; NPF lost on its Preliminary Injunction Motion and its Petition for a Writ of Mandamus; was compelled twice to produce discovery; and, was sanctioned for non-compliance with a court order.  Given the facts and circumstances in this case, as set forth in great detail by the Magistrate Judge, Sy Dawgs was the "successful" party, and the mere fact that NPF played the final card does nothing to persuade the Court otherwise.

For the foregoing reasons, the Court departs from the recommendation of the Magistrate Judge and finds that NPF, the unsuccessful party, is liable to Sy Dawgs, the successful party, under Paragraph 14 of the Parties' Non-Disclosure and Non-Competition Agreement, for all of the costs, expenses and reasonable attorneys' fees incurred while litigating this case.

**B.      Rule 37 Sanctions Against NPF.**

Fed. R. Civ. P. 37(d) authorizes the Court to impose sanctions for a wide variety of discovery misconduct.  Rule 37(d) reads in pertinent part as follows:

> (1) In general.
>
>> (A) Motion; Grounds for Sanctions.  The court where the action is pending may, on motion, order sanctions if:
>>
>>> (i) a party or a party's officer, director, or managing agent – or a person designated under Rule 30(b)(6) or 31(a)(4) – fails, after being served with proper notice, to appear for that person's deposition; or

> (ii) a party, afer being properly served with interrogatories
> under Rule 33 or a request for inspection under Rule 34,
> fails to serve its answers, objections, or written response.

> (B) Certification. A motion for sanctions for failing to answer or
> respond must include a certification that the movant has in good
> faith conferred or attempted to confer with the party failing to act
> in an effort to obtain the answer or response without court action.

> (2) Unacceptable Excuse for Failing to Act. A failure described in Rule
> 37(d)(1)(A) is not excused on the ground that the discovery sought was
> objectionable, unless the party failing to act has a pending motion for a
> protective order under Rule 26(c).

> (3) Types of Sanctions. Sanctions may include any of the orders listed in
> Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions the
> court must require the party failing to act, the attorney advising that party,
> or both to pay the reasonable expenses, including attorney's fees, caused
> by the failure, unless the failure was substantially justified or other
> circumstances make an award of expenses unjust.

The Magistrate Judge concluded as follows, recommending Sy Dawgs' Motion for Fees
and Costs be granted pursuant to Rule 37 as discovery sanctions.:

> NPF and its attorneys failed to cooperate in discovery at least due to their
> willfulness and fault, and possibly their bad faith. The SY Dawgs were seriously
> prejudiced by NPF's failure to cooperate in discovery. The docket highlights set forth
> earlier in this report and recommendation paint only part of the picture of the problems
> the SY Dawgs faced due to NPF's repeated discovery intransigence. The warnings from
> the Court about possible sanctions couldn't be any clearer. The District Court posed the
> question of whether lesser sanctions could be imposed short of dismissal, even gave
> NPF's lawyers time to brief the issue. No briefing was forthcoming except for a repeat of
> NPF's insistent denial of having done nothing wrong. No accommodation was ever
> reached.

> After reviewing the record in this case and hearing argument from the parties'
> counsel on the SY Dawgs' pending motion, I find that the numerous discovery violations
> committed by NPF and its lawyers as set forth by the SY Dawgs during the May 23, 2019
> hearing before the District Judge, reiterated during oral argument before me on July 13,
> 2019, and highlighted in the SY Dawgs' written submissions in conjunction with their
> pending motion did in fact occur. I further find that those violations, all of which
> implicated both NPF and its lawyers, continued unabated notwithstanding the District
> Court's orders requiring NPF's compliance with the SY Dawgs' discovery requests,
> requests made by the District Court, and the federal discovery rules governing civil cases.
> For these foregoing reasons, I recommend that the District Judge grant the SY Dawgs'

pending motion.

Magistrate Judge Baughman throughly and comprehensively analyzed this issue and the Court agrees with the Magistrate Judge's conclusion that Sy Dawgs is entitled to attorneys' fees and costs in this case from NPF as Rule 37 sanctions for discovery misconduct.[3]

### C.      Joint and Several Liability.

The Buchalter Law Firm and its attorneys argue that Sy Dawgs failed to demonstrate that sanctions against Buchalter and its attorneys are appropriate and, that if the Court is inclined to impose sanctions against Buchalter and its attorneys, due process requires notice and an opportunity to be heard.

"At its most basic level, the Supreme Court has said, 'due process' means 'notice and opportunity for [a] hearing appropriate to the nature of the case.'" *Prime Rate Premium Fin. Corp. v. Larson*, 930 F.3d 759, 770 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).  In this Circuit, there is no requirement that a full evidentiary hearing be

---

[3]      The Magistrate Judge also analyzed the issue of whether SY Dawgs should be awarded attorneys' fees pursuant to this Court's inherent authority to sanction bad faith conduct, ultimately concluding that awarding attorneys' fees as sanctions for discovery misconduct was a better fit under the facts and circumstances of this case.  Considering the pervasive misconduct of NPF and the Buchalter attorneys in this case, the Court is inclined to award fees under its inherent powers.  Three things are particularly troubling for the Court – the Buchalter attorneys' failure to follow even the most basic rules, principles and norms of discovery; questions regarding the Buchalter attorneys' truthfulness in their representations to the Court; and, the fact that NPF and the Buchalter attorneys filed this case February 2, 2018 and continued to string Sy Dawgs and the Court along for almost a year and a half, with no indication that it could substantiate any of its claims, only to jump ship when the possibility of an unfavorable ruling was imminent.  However, the Court respects that Magistrate Judge's thoughtful analysis on this issue and an award of attorneys fees under both the Parties' Non-Disclosure and Non-Competition Agreement and Rule 37 fully compensates Sy Dawgs for the attorneys' fees, costs and expenses incurred in this case.

held before imposing sanctions - what is required is that an attorney receive fair notice and a meaningful opportunity to respond to the allegations against them. *KCI USA, Inc. v. Healthcare Essentials, Inc.,* 797 Fed. Appx. 1002, 1007 (6th Cir. Ohio 2020)(citing *Wilson-Simmons v. Lake Cty. Sheriff's Dep't,* 207 F.3d 818, 822 (6th Cir. Ohio 2000)); *Metz v. Unizan Bank,* 655 F.3d 485, 491-92 (6th Cir. Ohio 2001).

In *KCI,* the Sixth Circuit held that "'[w]hile formal notice detailing the penalties' is not required, *KCI* or the court had to provide notice that sanctions were being sought against the individual attorneys and not just the firm." *KCI,* 797 Fed. Appx. 1002, 1006 (quoting *Banner v. City of Flint,* 99 F. App'x 29, 37 (6th Cir. Mich. 2004); see also *Wilson-Simmons v. Lake Cty. Sheriff's Dep't,* 207 F.3d 818, 822-23 (6th Cir. Ohio 2000)). A show cause order is "one mechanism that gives an individual 'specific notice of the sanctioning authority being considered and the conduct alleged to be sanctionable.'" *KCI,* 797 Fed. Appx. 1002, 1006 (quoting *Cook v. Am. S.S. Co.,* 134 F.3d 771, 775 (6th Cir. Mich. 1998); see also *Wilson-Simmons,* 207 F.3d 818, 822-23). "Likewise, notice from an opposing party would suffice." *KCI,* 797 Fed. Appx. 1002, 1006. "The 'adequacy of notice and hearing . . . turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct.'" *Id.* at 1007 (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 632 (1962). "Due process 'is a flexible concept and the particular procedural safeguards required will vary depending upon all circumstances.'" *Id.* (quoting *Cook,* 134 F.3d 771, 775). In *KCI* the Court noted that even a chance to file responsive briefing – which the sanctioned attorneys in *KCI* did not have – could have provided the necessary procedural safeguards. *KCI,* 797 Fed. Appx. 1007.

Buchalter and its attorneys argue that they did not have notice or an opportunity to be heard with regard to the issue of their joint and several liability with NPF for discovery

-24-

sanctions.  However, as reflected in the Docket and detailed in the Magistrate Judge's Report and Recommendation, that is not true.  The Court repeatedly informed the Parties that it would revisit the issue of sanctions sought by Sy Dawgs when this case concluded.[4]  The Buchalter attorneys were Counsel of record at all times relevant to the instant Motion and filed a brief in opposition each time a motion for sanctions was filed by Sy Dawgs. When NPF eventually moved to dismiss its case with prejudice, Sy Dawgs filed its Motion for Fees and Costs, included in which was a request for attorneys' fees, expenses and costs as discovery sanctions pursuant to Fed. R. Civ. P. 37.  In its Motion for Fees and Costs, Sy Dawgs expressly asked that the Court, "sanction NPF **and its counsel** for the misconduct in this case."

During the hearing on Sy Dawgs' Motion, the Magistrate Judge confirmed, on the record and with Buchalter attorneys participating, that Sy Dawgs sought sanctions against both NPF **and its Counsel**.   Counsel for Sy Dawgs indicated it sought sanctions against "NPF, its parent entity NPF Media, and the Buchalter Law Firm."  (Docket #238 at p. 19.)  Finally, as quoted above, in his Report and Recommendation, the Magistrate Judge concluded, after an extremely thorough review and analysis, that "NPF **and its attorneys** failed to cooperate in discovery." (Emphasis added.)  The Magistrate Judge recommended "that NPF **and its lawyers**" be required to pay for NPF's discovery violations as a sanction under Fed. R. Civ. P. 37.   Thus, NPF, Buchalter and the individual Buchalter attorneys of record in this case were on notice that Sy Dawgs sought to recoup its attorneys' fees, expenses and costs in this case from both NPF and its attorneys for the amounts incurred once Buchalter assumed representation.

Furthermore, NPF, Buchalter and its attorneys have been given repeated and ample

---

[4]

      In each of its Motions, Sy Dawgs' detailed its efforts to resolve the discovery issues without court action.  Fed. R. Civ. P. 37(d)(1)(B).

opportunities to be heard relative to the issue of discovery sanctions in this case.  NPF, through Buchalter, filed opposition briefs in response to each of Sy Dawgs' earlier motions for sanctions related to the discovery process; filed an opposition brief to Sy Dawgs' Motion for Fees and Costs; and, participated in the hearing on Sy Dawgs' Motion for Fees and Costs before Magistrate Judge Baughman.  Then, once the Magistrate Judge issued his Report and Recommendation, NPF, through Buchalter, filed "Plaintiff's Objections to the Magistrate Judge's Report and Recommendation;" "Buchalter's Supplemental Objections to the Report and Recommendation;" and, "Buchalter's Reply in Support of its Supplemental Objections to the Report and Recommendation."  Following this inordinate amount of post-Report and Recommendation briefing permitted by the Court, the Court promptly set "a hearing regarding the issue of the Buchalter Law Firm's liability for fees and costs," in order to ensure a full and fair opportunity to be heard.

NPF relies heavily on the Sixth Circuit decision in *KCI*.  However, *KCI* is factually distinguishable given the fact that the individual attorneys in *KCI* had no notice that sanctions were being sought or might be imposed against them; had withdrawn from the case 18 months prior to being sanctioned; and, had no opportunity to file responsive briefing or address the Court prior to sanctions being imposed.  In this case, the Buchalter attorneys were actively involved in the litigation of this case at all times relevant to SY Dawg's Motion for Fees and Costs.  The collective misconduct of the Buchalter attorneys throughout the course of discovery in this case has been thoroughly established and Buchalter and its attorneys were on notice that Sy Dawgs sought to hold them jointly and severally liable with NPF for Rule 37 sanctions and have had many opportunities to address the Court regarding the same.

The Court agrees with the Magistrate Judge's findings regarding the conduct of NPF and

-26-

its attorneys throughout discovery in this case, and agrees with the Magistrate Judge's determination that NPF and its attorneys should be held jointly and severally liable for discovery sanctions. Accordingly, for the reasons set forth in the Magistrate Judge's Report and Recommendation, the Court finds that, pursuant to Rule 37, NPF, along with Buchalter and the Buchalter attorneys of record in this case, shall be jointly and severally liable for the attorneys' fees, expenses and costs related to the well-documented discovery violations in this case.

### D. Calculation of Amounts Due.

The Court agrees with Magistrate Judge Baughman's findings that the billing rates charged by Sy Dawgs' counsel were reasonable and in line with market rates, and also with the finding that none of the entries reflect excessive time spent on the tasks described therein. Despite having several opportunities to do so, NPF and Buchalter did not challenge the billing rates or the reasonableness of the hours expended, only that certain entries should not be counted under the category of discovery expense.[5]

---

[5]

NPF's position in this case has consistently been that it owes Sy Dawgs nothing as far as attorneys' fees and costs. Prior to the Magistrate Judge's hearing on Sy Dawgs' Motion for Fees and Costs, Sy Dawgs provided the Court and opposing Counsel with documentation of its billing rates, fees, expenses and costs. (See Docket #239 at p. 36; Docket #235 at p. 1.) Individual billing entries were not addressed during the hearing before the Magistrate Judge. In its Objections to the Magistrate Judge's Report and Recommendation, NPF argued that it "was not afforded an opportunity to argue regarding specific time entries because the Court had not yet made a determination whether any fees were owed" and "did not invite argument on specific time entries." (Docket #241 at pp. 2-3.) NPF set forth several time entries as not being discovery related. However, each of the entries listed involves discovery and, as set forth in the Magistrate Judge's Report and Recommendation, each entry was carefully analyzed and a significant overall reduction was made to avoid over-counting. NPF and Buchalter were provided with Sy Dawgs' billing documentation prior to the hearing before the Magistrate Judge, participated in the hearing before the Magistrate Judge and filed Objections to the Report and Recommendation, each providing an opportunity for NPF and Buchalter to challenge Sy Dawgs' fees and costs. Further, as set forth above, this Court was generous in allowing additional post- Report and Recommendation briefing,

As set forth above, this Court finds that pursuant to Paragraph 14 of the Parties' Non-Disclosure and Non-Competition Agreement, NPF, as the unsuccessful party to this litigation, is liable for the entire amount of fees and costs incurred by Sy Dawgs, the successful party in this case, totaling $480,546.85.  This includes all amounts from the discovery and post-discovery stages of this case.  (See Docket #260-1, Affidavit of William Harter at Paragraphs 6 and 7 detailing fees and costs incurred.)

Furthermore, of that amount, and for the reasons stated above, the Court adopts the Magistrate Judge's well-reasoned and thoroughly analyzed recommendation that NPF, along with Buchalter and the Buchalter attorneys of record on this case, be held jointly and severally liable for attorneys' fees, expenses and costs.   Magistrate Judge Baughman conducted an extremely thorough and detailed review of the attorneys' fees and costs incurred by Sy Dawgs' in this case; narrowed the attorneys' fees and costs to those incurred during discovery, while represented by the Buchalter attorneys; and, reduced that amount, as stated therein, to ensure no "over-counting."  The Court agrees with the Magistrate Judge's reduction of fees, expenses and costs incurred during discovery.  However, no such reduction should be applied for amounts billed from July 2019 going forward, when NPF voluntarily dismissed its case with prejudice and the Parties began litigating the issue of liability for attorneys' fees, expenses and costs.  Accordingly, NPF, Buchalter and the Buchalter attorneys of record are hereby jointly and severally liable for attorneys' fees, expenses and costs in the amount of $287,248.77, plus pre-judgment interest, and post-judgment interest to accrue starting 30 days from the date of this

---

along with an additional hearing specifically to address the issue of fees and costs and the opportunity to submit proposed findings of fact and conclusions of law.  Thus, despite having multiple avenues to do so, NPF and the Buchalter attorneys presented no substantive challenge to Sy Dawgs' documentation of its billing rates, fees, expenses and costs.

Order, as calculated in the manner set forth in 28 U.S.C. § 1961.[6]

**IV.    Conclusion.**

Magistrate Judge Baughman's Report and Recommendation (Docket #239) is hereby

ADOPTED IN PART AND MODIFIED IN PART.

For the reasons stated above, Sy Dawg's Motion for Fees and Costs (Docket #212) is

GRANTED as follows:

NPF is liable to Sy Dawgs for attorneys' fees, expenses and costs in the amount of

$480,546.85, pursuant to Paragraph 14 of the Parties' Non-Disclosure and Non-Competition

Agreement.

Of that amount, NPF, Buchalter and the Buchalter attorneys of record are hereby jointly

and severally liable for attorneys' fees, expenses and costs in the amount of $287,248.77, plus

pre-judgment interest, and post-judgment interest to accrue starting 30 days from the date of this

Order, as calculated in the manner set forth in 28 U.S.C. § 1961, as discovery sanctions.

---

[6]        The final attorney fees and costs were calculated as follows.  The pre-dismissal
fees and costs total $254,770.55.  In accordance with the Magistrate's Recommendation,
approximately 75% of this amount is attributable to discovery, resulting in discovery
sanctions in the amount of $191,077.91 for this period.  Counsel for Defendants attested
that Defendants have incurred $134,136.00 in attorney fees and costs from May 2019
through the end of February 2021.  (ECF #260-1, at 2).  The amounts accrued in May and
June of 2019 ($29,475.14 and $8490.00 respectively) have already been accounted for in
the Magistrate's spreadsheet and included in the above calculation of pre-dismissal fees
and costs. (ECF #239-1, at 2).  The amounts accrued from July 2019 through June 2020
are also listed in the Magistrate's spreadsheet and included in the Court's calculation of
post-dismissal fees and costs.  (ECF #239-1, at 2).  Therefore, the additional amount
attributable to the time period of July 2020 through February 2021 is $61,072.86.  This
results in a total of $96,170.86 in post-dismissal fees and costs.  This amount is entirely
attributable to addressing the sanctions sought for the prior discovery abuses, and will be
awarded in full.  Thus, sanctions will be awarded in the amount of $287,248.77, plus pre-
and post- judgment interest.

IT IS SO ORDERED.

 s/Donald C. Nugent                
DONALD C. NUGENT
Senior United States District Judge

DATED: May 7, 2021